(No. 16308.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TINY BIMBO, Plaintiff in Error.

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*what is not a proper argument.* Epithets, vituperation and the expression of the personal opinions of attorneys have no place in the argument of a case, and it is the duty of the trial court to preserve decorum in the court room and see that the proceedings are conducted in such manner as will inspire respect for law and the administration of justice.

2. SAME—*defendant is entitled to a fair and impartial trial.* A defendant charged with crime has a right to a fair and impartial trial according to law, and the law does not provide one method for trying innocent persons and another for trying guilty persons, as all persons charged with crime are presumed to be innocent until they are proved guilty beyond a reasonable doubt according to the established methods of procedure.

3. SAME—*State's attorney must see that defendant has fair and impartial trial.* The State's attorney is a sworn officer of the court and it is his official duty to see that the defendant has a fair and impartial trial, and there is nothing in the duty of a State's attorney which requires him, in order to secure a conviction, to prejudice the right of a defendant to a fair trial.

4. SAME—*State's attorney should not arouse passion or prejudice of jury in argument.* Argument of counsel is for the purpose of assisting the jury fairly, deliberately and impartially to arrive at the truth of the facts submitted to them for their decision, and it is highly improper for the State's attorney to do or say anything in argument the only effect of which will be to inflame the passions or arouse the prejudices of the jury against the accused without throwing any light upon the question for decision.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HOSEA W. WELLS, Judge, presiding.

MILES J. DEVINE, and WILLIAM G. ANDERSON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

314—29

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Tiny Bimbo, was indicted, tried, convicted and sentenced to the penitentiary in the criminal court of Cook county upon a charge of obtaining $2250, the property of Amelia Marks, by means and use of the confidence game, and the record is before this court upon writ of error.

The indictment as originally returned into court contained three counts, the first for larceny as bailee, the second for obtaining money by means of the confidence game, and the third for larceny. A *nolle prosequi* was entered as to the first and third counts of the indictment and the conviction had upon the second.

Plaintiff in error and the prosecuting witness, Amelia Marks, are gypsies, each of them with large family and tribal connections, many of whom appeared upon the trial as witnesses. By reason of the imperfect knowledge of the English language of many of the witnesses and their peculiarities of speech, much incompetent evidence on both sides was heard by the jury.

Evidence was introduced on behalf of the People which tended to show that plaintiff in error obtained the confidence of Amelia Marks by proposing and arranging with her for a gypsy marriage ceremony between the daughter of plaintiff in error and the son of Mrs. Marks, and by exhibiting to her $2250 of his money and proposing to her that this sum, together with $2250 of her money, should be placed in the bank in the names of the young couple to give them a start in life, and that he thereby obtained from her $2250 ostensibly for such purpose, but that, in fact, it was not the intention of plaintiff in error that such marriage should take place and that such money should be so deposited, but that the whole matter was simply a swindling scheme on his part to secure for himself Mrs. Marks' money. There was also evidence introduced by the People which tended to show that the crime committed was robbery, and other evidence

that the crime committed was larceny as bailee. On the other hand, each particular piece of incriminating evidence was denied by plaintiff in error and his witnesses, and evidence introduced on behalf of .plaintiff in error tended to show that the prosecution in this case was a "frame-up" on the part of the complaining witness and her witnesses to prevent the prosecution of the son of the complaining witness upon a charge of rape upon the daughter of plaintiff in error, which charge the evidence shows had been brought before complaint in this case had been made. Much evidence was introduced on both sides tending to prove the respective contentions, and it was a serious question of fact for the jury to determine from the evidence which side was telling the truth. Where there is a serious conflict in the evidence, as there is in this case, the record, to sustain a conviction, must show that substantial and prejudicial error has not been committed upon the trial.

It is contended by plaintiff in error that the verdict of the jury was superinduced largely by the inflammatory remarks of the assistant State's attorney in his address to the jury. In his closing address to the jury the assistant State's attorney said: "It is said it takes a thief to catch a thief, and it can now be said it takes a framer and fixer to help a framer and fixer. I apply this to the worthy gentleman who has just spoken. [Meaning Miles J. Devine.] I do not apply this to his colleague, who is a very likable fellow but sometimes keeps very sorrowful company. ·

Mr. Devine: "I object to that remark, your honor; I object.

The court: "Yes, you have a right to object. There is no such evidence in this case."

The assistant State's attorney also said: "I do say it looks funny when the boy takes the witness stand in the morning and testifies that he was the second son and that Steve was his older brother by one year, that he followed next, and that there was another child born who died at a

very early age, and that Rosie came next; and next Tiny Bimbo comes and takes the stand and with his adroitness of his counsel, who knew all about framing and who did frame.

Mr. Devine: "I object. Nobody is going to say that to me.

The court: "There is no evidence of that. There is no evidence he talked with Mr. Devine.

Mr. Romano: "I say when we re-convened Bimbo takes the stand and accounts for Rosie's age.

Mr. Devine: "I take an exception.

The court: "Your exception is well taken. You are entitled to an exception. The jury are instructed to disregard that statement.

Mr. Romano: "That hits you a little bit, doesn't it?

Mr. Devine: "I take exception to that remark. By your dirty, scurrilous remarks I will get a new trial, if there is a verdict."

The assistant State's attorney also said: "This man [meaning Tiny Bimbo, plaintiff in error,] who retains lawyers by the year; this man who is known so well to Miles Devine that Mr. Devine is going to become an authority of gypsy life and custom.

Mr. Devine: "I object. There is no evidence in this case that Miles Devine and Tiny Bimbo know each other so well in this case, and I take exception to counsel's statement.

The court: "There is no such evidence, Mr. Romano.

Mr. Romano: "Mr. Devine says in his argument he knows the gypsy people very well.

Mr. Devine: "I said, 'If you knew them as well as some people knew them.' I didn't say I knew them.

Mr. Romano: "Well, I will withdraw the statement, but I say, men, that this Tiny Bimbo assumed a natural supervision in the eyes of these people. Supposing you take the word of Millie Marks that Tiny Bimbo, as the result of his position, received certain fees. Can you doubt for a minute

that Tiny Bimbo was the titled man who has been around courts and police stations so much as to make his very name held in awe and fear by the gypsy tribe?

Mr. Devine: "I object, your honor.

The court: "Counsel is entitled to some latitude in his argument."

The assistant State's attorney also said: "This man [meaning Bimbo] who holds himself as the king of these poor, dumb, driven animals; this man who comes here in American clothes and who not only offers his daughter on the ladder of avarice, as I said before, but came in here and exposed to the world what he claims is the shame of his daughter but what is in reality the shame of himself. I cannot conceive of anything lower or a heart more black-guardedly than this man, and I cannot conceive of reputable members of this bar practicing here for thirty years who will go up and bellow at the top of their lungs that this case is a frame-up by the State when he knows unquestionably what his client is doing."

The only excuse offered for this intemperate language is that Devine, one of the attorneys for plaintiff in error, in his argument to the jury criticised the conduct of the assistant State's attorney in prosecuting this case while the rape case against the son of the prosecuting witness was still pending, and that during the course of the remarks he characterized this case as a "trumped-up case" and a "frame-up, pure and simple." There is no doubt but that counsel for plaintiff in error made improper remarks to the jury, but no objection was made to them at the time, and the assistant State's attorney was not charged with "trumping-up" or "framing-up" the case. Had objection been made to the portion of the remarks of counsel for plaintiff in error which were improper the objection would probably have been sustained, as was done when objection was made to the improper remarks of the assistant State's attorney. Epithets, vituperation and the expression of the

personal opinions of attorneys have no place in the argument of a case to a jury. The court presiding over a trial has power to compel decorum in his court room, and it is his duty to see that the proceedings are conducted in such a manner as will inspire respect for law and the administration of justice. (*People* v. *Arnold,* 248 Ill. 169.) A defendant charged with crime has a right to a fair and impartial trial according to law, and the law does not provide one method for trying innocent persons and another for trying guilty persons, as all persons charged with crime are presumed to be innocent until they are proven guilty beyond a reasonable doubt according to the established methods of procedure. (*People* v. *Gardiner,* 303 Ill. 204; *People* v. *Newman,* 261 id. 11.) The State's attorney is a sworn officer of the court, and it is his official duty to see that the defendant has such fair and impartial trial. While errors are sometimes committed by counsel through eagerness to win a lawsuit, yet there is nothing in the duty of a State's attorney which requires him to prejudice the right of a defendant to a fair trial in an eagerness to secure a conviction. (*People* v. *Sorrells,* 293 Ill. 591.) Argument of counsel is for the purpose of assisting the jury fairly, deliberately and impartially to arrive at the truth of the facts submitted to them for their decision, and it is highly improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passions or arouse the prejudices of the jury against the accused without throwing any light upon the question for decision. *Earll* v. *People,* 99 Ill. 123.

On account of the misconduct of the assistant State's attorney the judgment of the criminal court will be reversed and the cause remanded.

*Reversed and remanded.*