THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*
SAMUEL CAGLE, Defendant-Appellant.

Fifth District No. 81—621

Opinion filed March 8, 1983.

Randy E. Blue and Kent Bartholomew Mann, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Donald W. Weber, State's Attorney, of Edwardsville (Stephen E. Norris and Robert G. Frederick, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

Defendant appeals the judgment of conviction and sentence imposed following a jury verdict finding him guilty of murder and armed violence. Defendant raises the following issues: (1) he was denied a fair trial by improper argument of the prosecutor, (2) he was denied effective assistance of counsel when his attorney failed to impeach a witness with a prior inconsistent statement and declined to call witnesses on his behalf, and (3) he was improperly charged with armed violence because of the double enhancement of a misdemeanor offense

in which a weapon was used.

The State's principal inculpatory witnesses were David Taylor, "Fat Sam" Thomas and an ex-girlfriend of the victim. Approximately one week before the killing in question, the defendant accompanied "Fat Sam" Thomas and two others on a trip to Alton to see the deceased, James Jennings. Once in Alton they went to the apartment of Jennings' ex-girlfriend and waited for him. The ex-girlfriend testified that she suspected that the attempted meeting involved drug dealing. A few days later Jennings was seen with a large sum of money, perhaps $1,000 to $1,200. He asked the ex-girlfriend to leave town with him, but she refused.

On Saturday night, November 1, 1980, "Fat Sam" Thomas called David Taylor at midnight and asked him to pick him up. Taylor picked up "Fat Sam" and defendant, and "Fat Sam" gave instructions to Taylor to drive to Alton. While en route, Taylor heard defendant and "Fat Sam" conversing about some person owing them some money. The trio arrived in Alton between 12:45 and 1 a.m. "Fat Sam" told Taylor to stay in the van while he and defendant went into an apartment building. They found Jennings in the apartment of his ex-girlfriend. Jennings told them that his ex-girlfriend had his money and they went looking for her in an apartment next-door. She was not there. The next-door neighbor said that Jennings asked for his ex-girlfriend, then asked him for money. He testified that Jennings looked desperate and nervous and that a tall man and a fat man were waiting for him. The three next walked to the apartment of the ex-girlfriend's parents, but she was not there. The three men then returned to the van and got in. When the defendant, "Fat Sam" Thomas, and the deceased entered the van, "Fat Sam" sat in front with Taylor and defendant and Jennings got in the back seat. Taylor testified that after he started driving he heard a shot from the back of the van. He also heard some tussling and a grunt-like moan. He figured someone had been shot back there. He further testified that he heard defendant say something about blood on the floor in the back of the van. "Fat Sam" Thomas testified that he heard a shot from the back of the van. Both Taylor and Thomas testified that the defendant later told Taylor to stop the van and that he then dragged or threw Jennings' body out of the van. At the time, Taylor had turned the radio up very loud. Taylor testified that the defendant and "Fat Sam" Thomas later washed out the van. "Fat Sam" Thomas testified that the defendant and Taylor later washed out the van. While the three were at the car wash, defendant threw his hat onto the roof. It was later found by police and identified at trial as belong-

ing to defendant.

Taylor initially told police that he had not driven to Alton on the night in question but that he had loaned the van to someone else. He testified that he did not tell the police about the murder because he was afraid. Sometime later "Fat Sam" Thomas told Taylor to tell the police what had happened, adding that he was sorry for involving Taylor in the incident.

"Fat Sam" Thomas initially told the police that he did not know Jennings and had not gone to Alton. He testified at trial that he did not remember exactly what had occurred. He had previously spoken with the St. Clair County public defender and told him that he had no recollection of the facts of the case.

Crime technicians testified for the State. A foot impression taken near the place where the body of the deceased was found was similar to defendant's shoe. Shotgun pellets found in the back of Taylor's van were similar to those found in the victim's hand. Flesh and bone fragments were found in the back of the van. A gold-colored fiber found on the road near the body of the victim was consistent with fiber in the carpet in the back of the van. Blood samples from the van were consistent with the victim's blood type.

As his initial issue defendant contends that in the rebuttal portion of his final argument the prosecutor made an argument that was inflammatory, prejudicial, not based upon any evidence in the record, and so prejudicial that it denied him a fair trial.

In that argument the prosecutor stated in pertinent part:

> "[Mr. Jensen, Assistant State's Attorney]: Again, sometimes it's easy to think that, 'Well, this is the type of crime that doesn't touch me or my family.' Or, 'This is the kind of crime that's isolated, and people in ghettos and projects have to put up with that kind of thing.' That's not true. People like Mrs. Joiner [a witness for the State], people around the area, they depend on the juries in Madison County to see that law and justice is done. When an offense like this is committed, it's a tragedy. But what would have been more a tragedy is if, when that person was getting shot, someone had been witnessing it, someone had been standing in the way of the pellets, or someone had seen something, and they too would have had to have been killed. Because this man is very careful about cleaning up his evidence. The hat, throwing it away. The van, washing it out.
>
> To prevent further crime, you must find him guilty. Because you cannot let this man out to do again what he has done. Be-

cause he'll be a little more careful next time. And there won't be any witnesses. Or there will be witnesses that he makes sure don't talk.

The witnesses that have testified, you noticed that some of the later witnesses happened to be very hesitant to answer? Wouldn't you be when you saw who was in the back of the courtroom here? Up from East St. Louis, or wherever they're from?

MR. HAWKINS: I would object to that, Your Honor.

THE COURT: Objection sustained.

MR. JENSEN: Each of the witnesses that testified have placed themselves in an awkward position. Their life is at stake because they testified in the matter. They've come forward truthfully. They have no reason to want to implicate someone who is not guilty of anything. And for that reason I ask that you also protect society, the witnesses, and further future victims."

Defendant argues that "[t]he prosecutor's explicit statement of a threat to the life of each witness necessarily carried with it an implicit statement that the defendant was responsible for 'who was in the back of the courtroom *** [u]p from East St. Louis' who apparently represented that threat." Defendant points out that there is no evidence in the record that the life of any witness had been threatened by anyone, either directly or by implication, nor was there any evidence that anyone in the courtroom was from East St. Louis, or elsewhere.

██ We must agree with defendant that the portion of the prosecutor's argument in which reference was made to threats upon the lives of witnesses, and in which he directed the jurors' attention to some person or persons sitting in the courtroom with the implication that those persons in the courtroom were the ones who would carry out the threat to the lives of the witnesses, was without any foundation in the record and wholly improper. Such argument, not being based upon evidence or susceptible of being inferred from any evidence, is improper and could serve no purpose other than to inflame and prejudice the jury. The State in its brief argues that the defense attorney invited the comments by arguments he had made, but we cannot find any basis for that position.

██ Defendant's attorney made only one objection during the course of the contested argument and that objection was sustained. The rule is that where an objection to improper argument is sustained, the error is cured. *People v. Bluitt* (1981), 98 Ill. App. 3d 19,

424 N.E.2d 62; *People v. McCottrell* (1969), 117 Ill. App. 2d 1, 254 N.E.2d 284.

■■ The remainder of the allegedly improper argument was not objected to by the defendant. The State contends, and we must agree, that this constitutes a waiver of asserted error. We find that the supreme court adheres to a waiver rule in all but the most egregious cases of improper argument. For instance, in three recent cases involving the appeal of murder convictions in which the death penalty had been imposed, our supreme court has held that the failure to object to improper argument constitutes a waiver of error, thus precluding argument on appeal that the improper argument constitutes error. *People v. Free* (1982), 94 Ill. 2d 378; *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346; *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

■ Aside from the fact of waiver, however, we find that although the argument objected to was improper, it does not constitute reversible error because the evidence of defendant's guilt was overwhelming. The argument could not, in our opinion, have contributed to the jury finding of guilt, as that was surely based upon the evidence alone. As was said by our supreme court in *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 326, 327:

> "[N]o objection was made during argument, and we are unable to say that the improper remarks were so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process. (*People v. Moore*, 9 Ill. 2d 224, 232.) The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly exercised the discretion vested in him. (*North Chicago Street Ry. Co. v. Cotton*, 140 Ill. 486.) The general atmosphere of the trial is observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld."

Also see *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700.

Defendant cites *People v. Ellison* (1980), 89 Ill. App. 3d 1, 411 N.E.2d 350, a case in which a conviction was overturned and a new trial ordered because of improper argument. The *Ellison* case is dis-

tinguished because it was a case close on its facts in which the prosecuting witness had changed her story on more than one occasion and the prejudicial argument of the prosecutor could well have swayed the jury to return a verdict of guilty. *People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17, is a supreme court case in which a conviction was reversed because of an improper argument by the prosecutor. However, as in the *Ellison* case, we think the conviction was overturned in that case because the argument of the prosecutor could well have brought about the verdict of guilty.

In sum upon this issue, although the prosecutor's argument was improper, the overwhelming evidence of guilt would preclude a finding that the impropriety brought about or led to the jury's finding of guilt. Furthermore, failure of the defendant to object to parts of the argument constituted a waiver, and where objection was made, the error was cured by the court's sustaining the objection.

■ In support of his second issue, defendant contends, citing *People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523, that he is entitled to a new trial due to the ineffective assistance of his counsel if he can show that his counsel was actually incompetent and that substantial prejudice resulted therefrom. Defendant notes that ineffective assistance of counsel can exist because of an attorney's lack of diligence. (*People v. Harter* (1972), 4 Ill. App. 3d 772, 282 N.E.2d 10.) Defendant contends that the incompetency of his counsel is shown by the fact that he failed to impeach a State's witness with a prior inconsistent statement, failed to permit defendant to testify in person, and failed to call witnesses to testify in defendant's behalf.

Our examination of the record, with attention to the quality of representation given defendant by his trial counsel, leads us to differ with defendant's argument. It is our appraisal that defendant's trial counsel was both active and attentive. He prepared and argued a motion to suppress; he presented and argued a motion *in limine*; he effectively cross-examined the State's witnesses and successfully impeached State's witnesses David Taylor and "Fat Sam" Thomas with prior inconsistent statements. While in retrospect it may be argued that there were some additional things trial counsel could have done differently, and that there were other things that trial counsel omitted to do, we think that it is fair and accurate to say that defendant received representation by competent counsel.

In support of this issue, defendant contends that "Fat Sam" Thomas gave telling testimony against him but admitted that on the night of the occurrence he had been taking medication and was drinking heavily. Defendant also points out that at a time prior to trial,

"Fat Sam" Thomas had told defendant's previous attorney, St. Clair County public defender James Donovan, that he had no recollection of any of the facts of the instant case. Defendant complains that this statement of "Fat Sam" Thomas to Donovan should have been used to impeach Thomas' credibility and that the failure so to impeach cannot be considered a matter of trial tactics.

Defendant's argument in this regard is not well taken. Mr. Hawkins, defendant's trial counsel, was called to testify at the hearing on defendant's post-trial motion. He stated that he had talked to Mr. Donovan prior to trial and that Donovan had

> "informed me that he had tried to talk to Mr. Thomas concerning the case, but that when Mr. Thomas appeared at his office to discuss the matter with him he could not remember anything and he appeared to be intoxicated or on drugs. He could not remember any of the facts or instances of the case."

Defendant states that the Donovan statement, as related by Hawkins, is ambivalent with respect to whether the statement that "Fat Sam" appeared to be intoxicated or on drugs related to the time of the Donovan interview with "Fat Sam" or related to "Fat Sam's" condition at the time of the occurrence. We cannot agree with defendant that the Donovan statement is ambivalent. It is plain that Donovan was describing the appearance of "Fat Sam" at the time of the interview. Thus considered, there was little, if anything, in "Fat Sam's" interview with Donovan that could be used by way of impeachment. Since "Fat Sam" had already been impeached with a statement that he did not "remember exactly what was going on" at the time of the occurrence, the use of the statement he made to Donovan, as related by Hawkins, would not have served to discredit further the Thomas testimony. We note that defendant did not call Donovan to testify at the hearing on his post-trial motion.

The defendant additionally claims prejudice because his trial counsel failed to call any witnesses to testify in his behalf. He contends that although they were not eyewitnesses, or even alibi witnesses, they would have testified that "Fat Sam" was involved in drug dealings with the deceased, Jennings, that he owned a shotgun and had the shotgun when he arrived at the defendant's house, and, thus, that "Fat Sam" Thomas had a motive for killing Jennings. The defendant testified at the hearing on the post-trial motion that his attorney did not talk to his witnesses, but his attorney claimed that he did. Defendant also stated at the hearing on the post-trial motion that his attorney refused to allow him to testify although he had wanted to, but his attorney stated that after a discussion of the matter, the

defendant agreed that he should not testify.

The names of four prospective witnesses for defendant had been given to attorney Hawkins. Hawkins testified that he had talked to two of the witnesses but had not talked to the other two. He had not talked to a Mr. Witherspoon because he could not be found. This is corroborated by the fact that the State was also looking for Mr. Witherspoon for service of a subpoena, but it was also unsuccessful in finding him. Hawkins did not talk to a Lewis Cagle because he was incarcerated in the St. Clair County jail on two murder charges, and his usefulness and credibility as a witness would be highly questionable. Hawkins did interview two of the proposed witnesses and determined that their testimony would be irrelevant, and he therefore elected not to call them.

The defendant furnished no affidavits or live testimony to show what any of the four witnesses would be able to testify to. Upon this state of facts we can only conclude that the defendant has failed to show incompetence upon the part of his counsel and that, taken at its worst, the decision of the attorney not to call any of the four witnesses represents a matter of trial strategy and not incompetency. It is the same with regard to defendant's contention that he wanted to testify but his trial counsel refused to permit it. Mr. Hawkins testified at the hearing on the post-trial motion that the matter of defendant's testifying in person had been discussed before and during the trial and that it was the decision of Hawkins, in which the defendant joined, that because of defendant's prior criminal record and the impeachment that was sure to result therefrom, defendant should not testify.

It thus appears that the ruling of the trial court in denying the defendant's post-trial motion was not against the weight of the evidence and did not constitute a breach of discretion.

■■ Defendant's final issue is his contention that he was improperly charged with the crime of armed violence in count III of the information where the presence of a weapon was first used to elevate a misdemeanor offense to aggravated battery and then used again to elevate the crime of aggravated battery to armed violence. Such double enhancement was proscribed by *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, and the State so concedes. But the State interposes with the argument that the defendant waived the point by not including it in his post-trial motion, a point the defendant then concedes. By way of a riposte, the defendant contends that the issue is not waived because count III of the information failed to state an offense and, therefore, is void, citing *People v. Gresham* (1982), 104 Ill.

App. 3d 81, 432 N.E.2d 654. The State urges that we decline to follow the *Gresham* case and, instead, hold that the point has been waived. However, we deem the *Gresham* case to have been decided properly and adhere to it, holding that count III of the information, insofar as it charged defendant with the crime of armed violence, is void.

The State, anticipating our following of *Gresham*, next asks that we exercise the power granted by Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)) and find defendant guilty of aggravated battery, a lesser included offense of armed violence. The State contends that the defendant could not claim surprise by such action in this case because count III of the information, in express terms, charged defendant with the crime of aggravated battery as a part of the charge of the greater crime of armed violence. Furthermore, the State points out, the jury was instructed that in order to convict defendant of armed violence, they must find that he had committed the crime of aggravated battery. The jury was given instructions on both simple battery and aggravated battery. Finally on the point, the State maintains that implicit in the verdict of guilty of armed violence is a finding that the defendant was guilty of aggravated battery. We agree with the State's characterization of the sufficiency of the charge and trial ingredients necessary for a proper finding of guilty of the crime of aggravated battery.

We see no impediment in finding the defendant guilty of the crime of aggravated battery. We do so by utilizing the authority granted by Supreme Court Rule 615(b)(3). In *People v. Robinson* (1981), 92 Ill. App. 3d 397, 416 N.E.2d 65, the court acted in a similar fashion in reducing the charge on a conviction of armed robbery to a charge of attempted armed robbery. The conviction of attempted armed robbery was affirmed, and the case remanded for reimposition of sentence.

■■ ■ Count III of the information contained all essential elements of the crime of aggravated battery and was sufficient to support a verdict of aggravated battery, assuming sufficient evidence. In *People v. King* (1966), 34 Ill. 2d 199, 215 N.E.2d 223, the supreme court held that to sustain a conviction for a lesser included offense on an indictment for the greater offense, all of the elements of the lesser offense must be included within the greater. There is no question here that all the elements of the offense of aggravated battery are included within the offense of armed violence. See *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.

The result we reach in this issue does not run afoul of the rule which prevents multiple convictions arising out of the same act, as

proscribed by *People v. King*. The facts brought out at the trial indicate that the victim was shot in the hand with a shotgun and was also shot in the head and body with bullets, thus establishing that there were separate acts of shooting that led to the death of the victim. See *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.

For the foregoing reasons, we affirm defendant's conviction and sentence for murder. We find defendant guilty of the crime of aggravated battery under count III of the information. Believing that the sentence imposed on defendant for murder conviction did not result, in whole or in part, from his conviction of armed violence, we remand the case to the trial court for resentencing on the conviction of aggravated battery. The conviction and sentence for armed violence are vacated.

Judgment of conviction and sentence for murder affirmed; judgment of conviction and sentence for armed violence vacated; judgment of conviction of aggravated battery entered, and case remanded for imposition of sentence for aggravated battery.

WELCH and KASSERMAN, JJ., concur.