THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE RAY, JR. (Impleaded), Defendant-Appellant.

First District (2nd Division)   No. 83—106

Opinion filed August 7, 1984.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Robert A. Alvarado, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

After a jury found defendant guilty of murder (Ill. Rev. Stat.

1983, ch. 38, par. 9—1), attempted armed robbery (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4 and 18—2), and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), he was sentenced to a natural life term of imprisonment. Defendant appeals from his conviction and sentencing, raising as issues whether: (1) various instances of prosecutorial misconduct denied him a fair trial; (2) evidence of his identification at an uncounseled lineup was improperly admitted; (3) the circuit court erroneously denied his motion to discharge his jury panel; and (4) his sentence was excessive.

On June 29, 1981, John Stewart was shot to death during an attempted armed robbery in a take-out restaurant. The following day, Chicago police officers signed a complaint naming defendant as the perpetrator, and a warrant for defendant's arrest was issued. Defendant was arrested on August 1, 1981, and was placed in a lineup at the district police station, but no attorney was present on his behalf.

Prior to trial, the circuit court denied defendant's motions: to suppress identification testimony and defendant's statements based on alleged violations of his right to counsel; to suppress his statements based on voluntariness; to discharge his jury panel; and to conduct a hearing to determine how his venire was selected.

At trial, the State introduced evidence to the effect that at about 11 p.m. on June 29, 1981, two men in a van were involved in a "commotion" with three pedestrians who were standing in front of the van at 69th and Wentworth. When the light on 69th turned green, one of the pedestrians told the driver of the van to "[p]ull it over," which he did, to the east side of Wentworth. Defendant was recognized as one of the men by a witness who passed within three feet of him. The witness knew defendant's family and was a friend of his brother. Defendant drew a gun, went up to the passenger side of the van, put his arm inside and a shot went off. The van pulled away. Defendant and his companions proceeded to the entrance of a restaurant near the southeast corner of 69th and Wentworth. The lighting was very good, as the restaurant "lights up the whole corner." While his companions remained outside, defendant entered the restaurant and pulled the gun on the "guy that was inside." The victim put his hands up in the air, and words appeared to be exchanged. When several shots rang out, the men on the street ran south on Wentworth, followed closely by defendant. The victim went to the door, crouching and holding his chest, and peered outside. Defendant turned around, fired another shot, and the victim fell back into the restaurant. The witness named defendant to police as the offender. That night, he identified defendant's picture from a group of photographs he was shown. He also

identified defendant in a lineup on August 1, 1981.

The driver of the van testified and essentially corroborated the evidence related to the shooting incident involving the van. He and his brother returned to the scene later that night and told police what had taken place earlier. The next day he was shown some pictures and he selected that of defendant as the man who had fired the gun in the van. On August 1, 1981, he viewed a lineup and identified defendant as the assailant. The van driver's brother testified in similar fashion, corroborating his brother's testimony. He selected defendant's photograph from a number of pictures he was shown by police the next day; he also identified defendant at a lineup conducted on August 1, 1981.

The proprietress of the restaurant at 6903 South Wentworth testified that the victim, a regular customer, entered her restaurant at about 11:20 p.m. on June 29, 1981, and placed and paid for his order. A man then entered the restaurant, crouching, with his right hand extended, and approached the victim. She heard three shots and called police, who arrived shortly thereafter. The victim was lying on the floor, along with his money and his Crown Royal bag. Although she saw the assailant's face, she could not positively identify him.

A witness from the Cook County medical examiner's office testified that the victim's death was caused by "a gunshot wound of the chest involving the heart and lungs."

For the defense, witnesses testified to certain factual discrepancies in the testimony given by some of the State's witnesses and that the two shooting occurrence witnesses viewed the lineup individually and made "tentative" identifications of defendant. The defense then rested.

After being found guilty, defendant waived his right to have a jury determine whether to impose the death sentence, sought by the State. The court, however, found sufficient mitigating factors to preclude imposition of the death penalty. Defendant's motion for a new trial was denied and, at a separate sentencing hearing, the court sentenced defendant to a natural life term of imprisonment. This appeal followed.

## I

■ Defendant initially contends that he was denied a fair trial because of repeated acts of prosecutorial misconduct during closing argument. We are compelled to agree. Our examination of the State's rebuttal argument reveals a litany of remarks so vituperative and inflammatory that they could only have created an atmosphere inimical

to the even-handed dispensation of justice and thus resulted in prejudice to defendant. We shall examine only the most flagrant instances of this misconduct to illustrate the bases for this conclusion.

First, the prosecutor repeatedly attacked the professional integrity of defense counsel, charging him with "lying" some 16 times, as well as with trying to "confuse" and "intimidate" the jury in an effort to win defendant's acquittal, a practice which our courts have condemned (*e.g., People v. Emerson* (1983), 97 Ill. 2d 487, 497, 455 N.E.2d 41; *People v. Starks* (1983), 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298), as serving merely to antagonize the jury and try the lawyers rather than the issue of guilt. (*People v. Suggs* (1977), 50 Ill. App. 3d 778, 783, 365 N.E.2d 1118; see also *People v. Polenik* (1950), 407 Ill. 337, 348, 95 N.E.2d 414.) Such remarks are "inflammatory in the extreme," regardless of the strength of the State's case. *People v. Brown* (1983), 113 Ill. App. 3d 625, 630, 447 N.E.2d 1011.

The State argues that the remarks were "invited" responses to defense counsel's failure to produce certain evidence "promised" by his opening statement. The State may properly comment on such failure (*People v. Durso* (1968), 40 Ill. 2d 242, 253, 239 N.E.2d 842, *cert. denied* (1969), 393 U.S. 1111, 21 L. Ed. 2d 807, 89 S. Ct. 923; but see *People v. Britt* (1974), 22 Ill. App. 3d 695, 707-08, 318 N.E.2d 138), but repeated references to it as counsel's "lying" transcended the scope of any "invitation" and were merely inflammatory. The State's contention, that other references to "lying" were invited when defense counsel interrupted the prosecutor's rebuttal argument to state that codefendant Michael Williams "ha[d] pled guilty and it was part of the deal that he would not testify for us," cannot be sustained. Although the interruption was improper, there is no record indication that the substance of counsel's remark was untrue and merited characterization as counsel's "lies." Lastly, defense counsel's statement in closing argument that defendant's lineup identification was unduly suggestive because he alone in the lineup wore a white shirt was supported by testimony of a prosecution witness who conceded on cross-examination that defendant was the only man in the lineup photograph wearing a long-sleeved white shirt. Such evidence dissipates the claimed invitation to respond to counsel's "lying." The profusion and gratuitous nature of the prosecutor's accusations made counsel's alleged prevarication the prevailing theme of the State's rebuttal argument, were extremely prejudicial, and could serve no purpose other than to inflame the passion of the jury. *People v. Suggs* (1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118; *People v. Brown* (1983), 113 Ill. App. 3d 625, 447 N.E.2d 1011.

The prosecutor, furthermore, misstated applicable law. As one example, it was stated, "Ladies and gentlemen, the defendant has been cloaked with innocence, but now that innocence is gone because the hand of guilt *** pointed to the defendant, Willie Ray." The presumption of an accused's innocence continues until the jury is convinced otherwise beyond a reasonable doubt. *People v. Bradford* (1979), 78 Ill. App. 3d 869, 876, 397 N.E.2d 863.

█ Prejudicial prosecutorial comments were made as to defendant's failure to testify by arguing that defense counsel misled the jury in his opening statement by saying that defendant "would get up there and he would say *** that he did not do it, but he was there." A criminal defendant has an absolute right not to testify; any comment by the State directing the jury's attention to that decision violates his rights under the fifth and fourteenth amendments to the Constitution. (*Griffin v. California* (1965), 380 U.S. 609, 615, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Burton* (1969), 44 Ill. 2d 53, 56, 254 N.E.2d 527; *People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180.) The prejudice accruing to defendant was exacerbated here not only because the remark misstated the substance of counsel's opening statement—which never suggested that defendant would testify—but also because defendant's objection to the remark was not sustained. See *People v. Thomas* (1980), 89 Ill. App. 3d 592, 602-03, 411 N.E.2d 1076.

█ Other prosecutorial remarks, impermissibly intimating the existence of favorable State evidence inadmissible at trial because of defendant's objections, were extremely prejudicial because "an insinuation which leaves the jury to speculate may be more prejudicial than erroneously admitted specific proof" (*People v. Emerson* (1983), 97 Ill. 2d 487, 497; see also *People v. Weinger* (1981), 101 Ill. App. 3d 857, 868-69, 428 N.E.2d 924), and constitute reversible error (*People v. Barnes* (1982), 107 Ill. App. 3d 262, 268, 437 N.E.2d 848; *People v. Lopez* (1980), 89 Ill. App. 3d 456, 457, 411 N.E.2d 1071). The remarks made include the following:

> "*** I have been waiting, because I have all of this that says that that is a lie; and you would have known that it was a lie, you would have known that Willie Ray wasn't just there, but Willie Ray pulled the trigger ***.
> * * *
> I wish I could give you my file as you sit there to go back in there, but I'm not allowed to because that is the law, and this man [defendant] has hid behind those rights, those rights that he took away from John Stewart."

"I have all this" could be understood to suggest that the prosecutor was referring to unpresented evidence, an interpretation buttressed by her use of "would have known." The subsequent statement was also highly prejudicial. The State's contention that it was "invited" by defense counsel's interruption concerning codefendant Williams' guilty plea is baseless.

Apparently responding to defense counsel's asking in argument why a witness chose not to speak to defense attorneys prior to trial, the prosecutor said: "I'll tell you why ***. He's afraid of him [defendant]. He was afraid of him, just like Doris Hamilton was afraid of him." After an objection, the prosecutor suggested that the witness moved out of the State in fear of defendant, and that a second witness moved after his name was put into a police report, adding that "he's afraid for his life, and he has a right to be." Finally, the prosecutor argued: "They [defense counsel] are trying to intimidate you, just like he [defendant] intimidated the witnesses, just like he *** is working through the lawyers to intimidate you in the courtroom." Prosecutorial comments which suggest that witnesses were afraid to testify because defendant had threatened or intimidated them, when not based upon any evidence in the record, as here, are highly prejudicial and inflammatory. (*People v. Brown* (1983), 113 Ill. App. 3d 625, 630; *People v. Dace* (1983), 114 Ill. App. 3d 908, 920, 449 N.E.2d 1031.) The prejudicial effect here was compounded by the suggestion that defense counsel was himself employing similar tactics with the jury. The State's contention that these comments were "invited" is meritless. See *People v. Cagle* (1983), 113 Ill. App. 3d 1024, 1028, 448 N.E.2d 893.

An improper intimation that defendant had a prior criminal history was made when the prosecutor stated that "when the police were looking for Willie Ray they were looking for him by name and by serial number" (see *People v. Patterson* (1976), 44 Ill. App. 3d 894, 899, 358 N.E.2d 1164; *People v. Johnson* (1981), 102 Ill. App. 3d 122, 129, 429 N.E.2d 905); and that defendant did not confess because "the man is too wily and too crafty, and he's been on the streets too long." See *People v. Weathers* (1975), 62 Ill. 2d 114, 120, 338 N.E.2d 880).

■ Other comments suggested that defendant was manipulating his constitutional rights to escape conviction. The prosecutor argued that "this man has hid behind those rights"; she concluded her argument by stating: "It's about time the Constitution that this man is hiding behind is put in back of him, because it's been his shield for a year and it's over." Comments which imply that an accused should be

penalized for exercising his constitutional rights are improper. *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 1073, 405 N.E.2d 1306.

The following remarks were more severely prejudicial:

"[T]hat is another one of his rights *** [defendant is entitled to] not only Public Defenders who work full time *** but Public Defenders who are part of the elite murder task force.

***

They are people who defend murderers for a job ***. [Counsel is] one of the elite people in America on a murder task force Public Defender ***. He does it for a living. We may have two hundred cases *** but we don't have two hundred murderers on this call, and that's all they do. That's not all we do."

To hold, as the State urges, that these remarks were "invited" by defense counsel's having told the jury that they were public defenders would strain credulity.

Prosecutors are allowed wide latitude in closing argument, and improper remarks will not merit reversal unless they result in substantial prejudice to defendant (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200; *People v. Pittman* (1982), 93 Ill. 2d 169, 176, 442 N.E.2d 836), considering the content of the language used, its relationship to the evidence, and its effect on defendant's right to a fair and impartial trial (*People v. Brown* (1983), 113 Ill. App. 3d 625, 630-31; *People v. Franklin* (1976), 42 Ill. App. 3d 408, 421, 355 N.E.2d 634).

In the instant case, eyewitness testimony strongly established defendant's guilt; reversal, nevertheless, may be warranted. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880; *People v. Starks* (1983), 116 Ill. App. 3d 384, 396; *People v. Campbell* (1983), 115 Ill. App. 3d 631, 637-38, 450 N.E.2d 1318; *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 401, 428 N.E.2d 503.) Taking cognizance of the rule that some constitutional errors, which, in the setting of a particular case, are so unimportant and insignificant that they may be deemed harmless under Federal and State constitutions (*United States v. Hasting* (1983), 461 U.S. 499, 507-12, 76 L. Ed. 2d 96, 105-09, 103 S. Ct. 1974, 1980-82), our review of the entire record here compels the conclusion that the cumulative impact of the numerous improper remarks ineluctably deprived defendant of a fair and impartial trial. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629; *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298; *People v. Scaggs* (1982), 111 Ill. App. 3d 633, 637-38, 444 N.E.2d 674; *People v. Weinger* (1981), 101 Ill. App. 3d 857, 866.) The prosecutor's actions in this case read like a veritable hornbook of "do nots." They

were opprobrious and inexcusable, thwarting and wrecking the State's otherwise well-prosecuted and strong case. The State's interest in a criminal prosecution is not that it must win at all costs, but to assure that justice is done, and it is a prosecutor's duty as much to refrain from improper methods calculated to produce a conviction as it is to employ legitimate techniques to secure a just conviction, striking hard blows, but not foul ones. See *Viereck v. United States* (1943), 318 U.S. 236, 248, 87 L. Ed. 734, 63 S. Ct. 561.

■ The responsibility for restraining prosecutorial misconduct rests also with the circuit court. The circuit court is vested with power to compel courtroom decorum and must conduct proceedings in a manner such as will inspire respect for the law and administration of justice. (*People v. Bimbo* (1924), 314 Ill. 449, 454, 145 N.E. 651; *People v. Shaw* (1981), 98 Ill. App. 3d 682, 688, 424 N.E.2d 834.) Argument of counsel, as here, which is seriously prejudicial, should be terminated by the court *sua sponte* and the jury instructed to disregard it. (*People v. Moore* (1956), 9 Ill. 2d 224, 232, 137 N.E.2d 246.) Where this is done, but the prosecutor continues thereafter to resort to similar improprieties, the court must take further action to control the argument, which may include the imposition of appropriate sanctions. *People v. Stock* (1974), 56 Ill. 2d 461, 472-73, 309 N.E.2d 19.

The circuit court in the present case initially directed the jury not to consider argument as evidence; yet, the misconduct was permitted to continue unabated. The court responded to most of defendant's objections by noting that it was "taking argument." From such a response it is unclear whether the objections were being sustained or overruled. The record reveals that several of defendant's objections were never ruled upon by the court; indeed others, as illustrated by the following excerpts, were answered by the prosecutor herself:

> "[Prosecutor]: *** Well, what they neglected to tell you, ladies and gentlemen, is that that is another one of his rights, and he has a right to not only Public Defenders who work full time in the criminal justice system, but Public Defenders who are part of the elite murder task force.
>
> [Defense counsel]: Objection. There is no evidence of that. I'm not—
>
> [Prosecutor]: They are people who defend murderers for a job.
>
> THE COURT: Pardon me—
>
> [Prosecutor]: That is their living. He is an expert at this, and don't let him tell you any differently.
>
> * * *

[Defense counsel]: Objection, Judge. There is no evidence of that in the record.

THE COURT: We're taking argument.

[Defense counsel]: I ask the jury be admonished to disregard it.

[Prosecutor]: I'm sure you would *** [counsel].

THE COURT: All right, do you want me to deal with both of you at the close of this case? Let's proceed.

[Prosecutor]: This is rebuttal, if I may continue.

THE COURT: This is rebuttal. You are presenting rebuttal argument. Let us proceed with rebuttal argument."

It is regrettable that the misconduct in this case occurred in the context of evidence pointing to defendant's guilt; nevertheless, the conviction must be reversed and the cause remanded for a new trial.

II

Because of the result reached here, the issues concerning defendant's sentencing and his motion to discharge his venire need not be considered. Defendant's contention that the circuit court erroneously admitted evidence of his identification at an uncounseled lineup, however, may recur at retrial.

■■ Testimony regarding an identification made at an uncounseled lineup for which counsel is mandated is subject to a *per se* rule of exclusion (*Gilbert v. California* (1967), 388 U.S. 263, 272, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 283, 387 N.E.2d 1071); however, where an independent basis for identification is shown, such evidence is not subject to *per se* exclusion. (*Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 387 N.E.2d 1071.) Prior to the instant lineup, defendant was named as the offender by a witness who knew him and who also selected defendant's picture from an array of photographs. Two other witnesses, who had ample opportunity to observe defendant while he assaulted them, also identified defendant's photograph prior to viewing the lineup. Their identification of defendant as the offender was based on their observation of him other than during the allegedly improper lineup; accordingly, their in-court identification was properly admitted. (*People v. Williams* (1980), 91 Ill. App. 3d 631, 634-35, 414 N.E.2d 1235.) Similarly, the admission of testimony concerning the lineup identification itself was harmless beyond a reasonable doubt. See *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; *People v. Swift* (1980), 91 Ill. App. 3d 361, 365, 414 N.E.2d 895.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the cause for a new trial.

Reversed and remanded.

STAMOS and DOWNING, JJ., concur.