THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICKY WEBB, Defendant-Appellant.

First District (1st Division)   84—2919

Opinion filed May 5, 1986.

Steven Clark and Paul Alexander Rogers, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Christina Mundy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, the defendant, Ricky Webb was found guilty of rape and unlawful restraint and not guilty of deviate sexual assault and attempted rape. Defendant was sentenced to 15 years for rape and a concurrent three year term for unlawful restraint. Defendant now appeals his conviction and sentence. On appeal, defendant contends that he was denied a fair trial because the prosecution (1) continued with questions after objections had been sustained by the trial court to those questions; (2) minimized its burden of proof; (3) implied that the right to a fair trial was a mere procedural formality; and (4) appealed to the passions of the jury.

Defendant further contends that his conviction for unlawful restraint must be vacated because he was convicted of rape and unlawful restraint is a lesser included offense of rape.

The evidence adduced at trial showed that Laurie, a 21-year-old mentally retarded woman, who lived with her mother at 4800 South Lake Park Avenue, in Chicago, ran away from home on August 25, 1983. On the afternoon of that day, while her mother was at work, Laurie walked west on 55th Street for several blocks and met Sidney Roans, a codefendant.[1] Laurie, after going with Roans to a hot dog stand, went with him to his house, where, during the night, she had sexual intercourse with him. On the morning of August 26th, she went with Roans to a nearby park and met defendant and Tyrone King. In the afternoon she went with Roans, King and defendant to an abandoned house where defendant pulled down his pants and urged her to have sex with him. She refused. Later, Laurie testified that it was growing dark and she did not know where to go and she followed defendant into an alley where defendant again exposed him-

---

[1]Sidney Roans won a directed verdict on the deviate-sexual-assault, attempted-rape, and unlawful-restraint charges and was found not guilty of rape.

self and asked her to have sex with him. Again, she refused. Defendant went out of the alley for a few minutes and then returned with another man and told the man to have sex with Laurie. Defendant said that if Laurie did not undress, he would kill both her and the other man. The other man then had sex with Laurie while defendant watched.

Defendant then took Laurie to his house, where he introduced her to his brother-in-law and told her to have sex with the brother-in-law. She initially refused, but defendant threatened to kill her. The brother-in-law then took her into the bedroom and had intercourse while defendant was in the next room.

Defendant took complainant outside and introduced her to a man named Mike. They accompanied Mike to a second abandoned house, where defendant told complainant to undress. Defendant left complainant, and Mike and certain other men proceeded to assault her and have intercourse with her. Later Mike took complainant to a hotel and had intercourse with her. The following morning, August 27, Mike took complainant to a place which she referred to as the "five brother's house," where she stayed until the morning of August 30, 1983.

Defendant's testimony concerning what happened after he and complainant had left the first abandoned house was substantially different from complainant's. Defendant testified that he and Laurie had gone directly to his sister's house. He denied having stopped in an alley and forcing Laurie to have sex with another man there. Defendant also denied that his brother-in-law had done anything more than speak to Laurie. Defendant further testified that when he and Laurie had left his sister's house they had not met anyone named Mike. They did not an acquaintance of defendant's whom he knew only as "Bobo." Bobo invited the defendant and Laurie to his apartment, but defendant did not want Laurie to go to Bobo's because the defendant knew that Bobo was in a street gang. When they arrived at Bobo's apartment, there were four other men there, none of whom the defendant knew. After 45 minutes, the defendant decided to leave and asked Laurie if she wanted to leave with him. She decided to stay. Defendant then left.

Kay, the complainant's mother, testified that Laurie returned home on August 30, 1983. Kay also testified that she had contacted some newspapers on August 26, 1983, about Laurie's disappearance. Prior to trial, the court had granted the defendant's motion *in limine* prohibiting the prosecution from introducing a copy of a newspaper article concerning Laurie's disappearance from home.

■■ Defendant first contends that the prosecution committed several distinct acts of misconduct, which, taken cumulatively, deny defendant a fair trial. The first of these is that misconduct occurred during the direct examination of Kay, the complainant's mother, when the prosecution sought to refer indirectly to a newspaper article that the trial court had held inadmissible on defendant's motion *in limine*. Defendant asserts that the prosecution persisted in the prohibited line of inquiry and only after the court sustained further objections and admonished the prosecution did the prosecution abandon the inquiry. Defendant maintains that the prejudice created by the practice of the prosecution in continuing questions after objections have been sustained has been condemned as reprehensible. *People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402; *People v. Weinger* (1981), 101 Ill. App. 3d 857, 428 N.E.2d 924.

In *Hovanec,* the prosecutor attempted five separate times, over sustained objections and in the presence of the jury, to stipulate to a pretrial statement made by a witness, that had been suppressed. Moreover, the prosecutor's other improper statements made during closing argument were not inadvertent errors and were severely prejudicial and a new trial was granted. In *Weinger,* the prosecution on more than 20 occasions, had persisted in asking witnesses to answer questions to which the trial court had already sustained defense counsel's objections. On appeal, the court ruled that the prosecutor's tactic of repeating questions ruled objectionable by the trial court was evidently calculated to cast defense counsel in the role of obstructionists who were trying to keep damaging evidence from the jury. The court concluded that the prosecution failed to manifest a proper regard for the trial court's evidentiary rulings and for the defendant's constitutional right to a fair and impartial trial and that the cumulative impact of such errors did affect the jury's verdict of guilty. A new trial was therefore ordered.

In the instant case, the motion *in limine* sought to bar the introduction of an August 30, 1983, Chicago Defender newspaper article relating to the victim. The trial court allowed the motion and stated, "it's going to be of an interlocutory nature. I can change my mind on it." At trial, the court, in a side-bar discussion stated, "I'll allow you to ask her [the victim's mother] to testify that she notified the newspaper, and any further than that, at least at this time, I will not allow." Thereafter, the prosecution attempted to determine whether any newspaper articles were in fact published and, if so, where the articles were published. The trial court sustained defense counsel's objections and admonished the prosecution. The inquiry was then aban-

doned. The prosecution refrained from any further attempt to elicit testimony on the subject of the newspaper articles for the duration of the trial and did not comment on the newspaper articles to the jury during his closing or rebuttal arguments. It is obvious that the conduct exhibited by the prosecution in the *Hovanec* and *Weinger* cases, and found to be prejudicial to the rights of the defendant, is not present in the case at bar.

■ Defendant next complains that a statement made by the prosecution that "[i]f there was ever a case in this building that cried out for the law of accountability *** it is this case." Defendant argues that the implicit message of this remark was that the jury could hold the defendant accountable because defendants in other cases had been held accountable on weaker evidence. Defendant further argues that this statement minimized the people's burden of proof on the question of accountability. (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 453 N.E.2d 849; *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298.) The record discloses that during the rebuttal argument the prosecution reviewed the evidence for the jury, namely, that defendant had brought the victim to a number of different men over the course of several days and had either directed or acquiesced to the rapings and beatings committed by those other men. The prosecutor's comment complained of urged the jury to properly administer the applicable law of guilt by accountability. In *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301, our supreme court held that such remarks are proper if based on facts in the record or inferences fairly drawn from those facts. We believe the prosecutor's remarks fell within those legitimate bounds and the cases cited by defendant (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 453 N.E.2d 849; *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298) may be distinguished on the particular facts of those cases.

■ Defendant's next allegation of misconduct charges that the prosecution, near the end of the rebuttal argument, trivialized the basic guarantee of a fair trial with the following remarks:

"In concluding to you, ladies and gentlemen, we have heard a lot about rights over the last few days, and that's fine. Everybody has a right to a fair trial. The defendants have received a fair trial. They have exercised their rights under the Constitution."

Defendant asserts that the remark was prejudicial since it denigrated the constitution as being merely the refuge of the guilty. (*People v. Ray* (1984), 126 Ill. App. 3d 656, 467 N.E.2d 1078.) The State argues that defendant failed to object to the comments in his post-

trial motion and even though the failure to object was due to the fact that defendant did not have a complete and entire report of proceedings, the issue is waived on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Defendant relies upon *People v. Ray* (1984), 126 Ill. App. 3d 656, 467 N.E.2d 1078, in support of his contention, and we find *Ray* is distinguishable. In the instant case, the prosecutor stated that defendant had a right to a fair trial and that defendant had received a fair trial. In *Ray*, the prosecutor argued that the defendant had hidden behind his constitutional rights and utilized his rights as a "refuge for the guilty." The court found the prosecutor's remarks were improper and prejudicial because they implied that an accused should be penalized for exercising his constitutional rights. In the instant case, the prosecutor's comment did not depict the Constitution as a shield behind which the defendant had hidden, but expressed a principle of constitutional law to the jury, that defendant had a right to a fair trial and that defendant had received that fair trial. We do not find that such comment was prejudicial or denigrated the Constitution as claimed by defendant.

■ Finally, we do not find that the prosecutor's comment referring to the victim's rights, "that she's a citizen, that she has just as much a right to act as a citizen in our streets as any other person in this city," unfairly appeals to the jury's sense of outrage and emotion. A prosecutor is allowed wide latitude in closing argument. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) "A prosecutor may properly comment unfavorably on the defendant and the violence of the crime, when supported by the evidence, and speak of the evil results of crime and the benefits of a fearless administration of the law." (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739, 744.) We do not, however, find that the evidence in this case is closely balanced, and in our judgment the verdict in this case could not have been otherwise, had this improper remark not been made.

■ Lastly, defendant assigns error to the fact that he was improperly convicted and sentenced for the offense of unlawful restraint when he was also convicted and sentenced for rape. Defendant claims that he may not be convicted of both the offense of rape and the lesser included offense of unlawful restraint, even where multiple acts are involved. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Defendant failed to raise this issue in his post-trial motion and therefore, the issue is waived for purposes of appeal. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) Even if the error complained of here were considered to be plain error pursuant to Supreme Court

Rule 615(a) (87 Ill. 2d R. 615(a)), such error would not entitle defendant to the relief he seeks. The record reflects that defendant committed at least three separate and distinct acts of unlawful restraint.

Defendant's first commission of the offense of unlawful restraint evinced at trial occurred on August 26, 1983, when defendant was in a vacant house with Laurie and removed his pants, told Laurie that he wanted to have sexual relations with her, and continually blocked Laurie's efforts to leave the vacant house. Defendant again committed unlawful restraint that same date when he physically carried Laurie back inside the vacant house and reiterated his desire to have sexual relations with her. During neither of these two incidents did defendant consummate his desire.

Later that evening, after defendant had taken Laurie from the vacant house, defendant took her to an alley and then into another house. Defendant pushed and "shoved" Laurie and twisted one of her arms around her back, again restraining her against her will.

Each of the three instances of unlawful restraint was independent of any commission of rape and satisfies the "separate and distinct act" test set forth in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, which permits multiple convictions and concurrent sentences, other than lesser included offenses. The evidence supports the distinct conduct by defendant and is clearly distinct from the conduct supporting the rape charges. The defendant's reliance on *People v. Williams* (1983), 115 Ill. App. 3d 276, 450 N.E.2d 851, is misplaced, and the facts in that case are readily distinguished.

For the above reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'CONNOR and QUINLAN, JJ., concur.