THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHILIP SHAW *et al.*, Defendants-Appellants.

First District (1st Division)    No. 79-1505

Opinion filed July 27, 1981.

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, and Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Iris Sholder, and Deborah M. Dooling, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Philip Shaw and Ricardo White were charged by indictment with the offense of murder. Shaw elected to have a jury trial and White chose to have a bench trial. The trials were held simultaneously. Both defendants were found guilty of murder. Shaw was sentenced to a prison term of 40 years, and White to a term of 30 years. Both Shaw and White now appeal their convictions.

On appeal, defendants jointly contend that they were denied a fair trial because of certain improper statements made by the State during closing argument. Defendant White contends that (1) the trial court erred in finding him guilty of murder on the theory of accountability, and (2) the trial court erred in conducting his bench trial simultaneously with defendant Shaw's jury trial. Defendant Shaw contends that (1) the trial court erred in permitting the State on redirect examination to elicit testimony regarding a photographic identification which had not been asked about on direct or cross-examination, and (2) the trial court erred in ordering his defense attorney to refrain from making objections while defendant White's attorney was conducting cross-examination of one of the State's witnesses.

We affirm.

Philip Shaw and Ricardo White (defendants) were charged with the offense of murder. Specifically, the indictment alleged that defendants had shot and killed Edward Lewis on March 14, 1978. Shaw, who was represented by an assistant public defender, elected to have a jury trial. White, who was represented by private counsel, chose to have a bench trial. The trials were conducted simultaneously.

Four eyewitnesses to the shooting, Lillian Farmer, Marva Davis, Grandville Farmer and Willie Newman testified at trial. Lillian Farmer testified that she was working as a cashier at Ed's Cut-Rate Liquors at 843 W. 103d Street in Chicago during the early morning hours of March 14, 1978. At approximately 2 a.m. she was in the store together with the owner, Edward Lewis, and with another employee, Marva Davis. As Mr. Lewis was locking the front door in preparation for closing, two men appeared outside the door. Lewis opened the door and invited the two

men inside. The men proceeded to a cash register, ordered a half-pint bottle of gin and paid for it. Meanwhile, Shaw was standing over to the side near a cigarette machine.

White walked over toward Lewis. Mrs. Farmer testified that they began "hitting on each other or tussling or maybe pulling, reaching at somebody." She further stated that she "felt they were just playing around." Mrs. Farmer looked away from White and Lewis to wait on a customer who had entered the store behind Shaw and White. She then heard four shots. She turned and saw Shaw pointing a gun toward Lewis, who was squirming on the floor. Farmer recalled saying "Why would Phil do a thing like that?" after the two left the store.

Later in the day on which the shooting occurred, Farmer examined photographs which were brought to her home by the police. She picked out photos of Ricardo White. Later, she viewed a lineup and identified Shaw and White.

Marva Davis also was working as a cashier at the liquor store when the shooting occurred. She testified that she had known both defendants for about three years. Her testimony substantially corroborated Lillian Farmer's account of the incident.

While the incident was occurring inside the liquor store, Grandville Farmer was sitting in his parked car outside of the store waiting for his wife Lillian to finish work. Farmer testified that shortly before the shooting he noticed a car with four persons in it parked outside the liquor store. Looking through the store window, Farmer witnessed the shooting. During his trial testimony, Farmer identified White as the person who had shot Lewis. When he examined a lineup photo during direct examination, however, he labelled Shaw as the gunman. In addition, Farmer previously had identified Shaw as the gunman when he viewed a lineup in which both Shaw and White participated.

Willie Newman testified that he was inside the liquor store when the shooting took place. A few days after the incident, Newman was shown a group of photographs, from which he identified Shaw and White as the two men involved in the shooting.

Investigator Edmund Leracz testified that he was called to the homicide scene shortly after the shooting. After completing his investigation at the scene, he went to Shaw's residence where he was joined by Grandville Farmer. Farmer identified a vehicle which was parked in Shaw's driveway as the vehicle which he had seen at the scene of the shooting. Leracz entered Shaw's residence and arrested Ricardo White and an individual named Robert Craig.

At the conclusion of the trials, the jury returned a verdict of guilty of murder against Shaw. The trial judge found White guilty of murder. Shaw and White were sentenced to prison terms of 40 and 30 years respectively. Both defendants now appeal their convictions.

Both Shaw and White contend that they were denied a fair trial because of certain statements made by the State during closing argument. The statements to which defendants object are as follows:

> "These defense lawyers are hired guns, they * * *. They're paid to do a job and they do it well. And they're paid to do a job to mislead you, to confuse you, and that's exactly what has happened here."

> "But, what bothers me most about what they did by Marva Davis, is that these two men, these defense lawyers, had the audacity to stand before you in opening statements and say they grieve at the loss of Edward Lewis. What a fraud these two lawyers are."

> "It's an affront to me and it's an affront to the judge that something like that * * * can be done in a courtroom. It is a good thing Judge Strayhorn saw through it."

The defense attorneys objected to each of these comments by the State. The trial judge overruled an objection to the first statement and sustained objections to the remaining statements.

The State asserts that the comments were based on the evidence and therefore proper. Having carefully reviewed the record, we believe that the remarks complained of had little basis in the record, and we fail to see how the State can seriously contend that these statements were proper. The State's accusations that the defense lawyers were "hired guns" and "frauds" and that defense counsel deliberately tried to mislead the jury clearly exceeded the bounds of propriety.

■■ In our judgment, however, a guilty verdict was the only reasonable conclusion to be reached based on the evidence. In light of this fact and the fact that the trial judge promptly sustained objections to most of the improper remarks, we choose not to disturb the jury verdict or trial court's judgment below.

■■ Defendant White argues that his conduct of placing his hands on the victim prior to the shooting was insufficient to render him accountable for the murder of Edward Lewis. To bring an accused within the purview of the accountability statute, the State must establish that the accused solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of the offense. (See Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c); *People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284.) Additionally, the State must prove that the accused's act of soliciting, aiding, abetting, agreeing or attempting to aid took place either before or during the commission of the offense and with the concurrent specific intent to promote or facilitate the commission of the offense. See Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c); *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.

■■ Neither mere presence nor negative acquiescence alone is enough to render a defendant accountable for a crime. (*People v. Nugara* (1968), 39

Ill. 2d 482, 487, 236 N.E.2d 693.) When the evidence shows, however, that a defendant was present at the scene of the crime without opposing it, the trier of fact may competently consider this conduct with other circumstances in determining whether a defendant should be held accountable. See 39 Ill. 2d 482, 487.

The trial record in the case at bar provides us with a strong case for finding White guilty of murder based on accountability. Defendants entered the liquor store together at 2 a.m. A store clerk observed defendant White and Edward Lewis "hitting on each other or tussling or maybe pulling." The clerk heard approximately four shots. She turned and saw defendant Shaw pointing a gun toward the deceased. Defendants then walked out of the store together. Considering defendant White's conduct immediately before the shooting, together with the evidence that he arrived and fled with defendant Shaw without aiding the victim in any way, we believe that the trial court was correct in finding defendant White guilty of murder on the accountability theory.

Defendant White also argues that the trial court erred in conducting his bench trial simultaneously with defendant Shaw's jury trial. As a result of this procedure, evidence was elicited from witnesses by defendant Shaw's attorney which tended to incriminate White. White suggests that it was impossible for the trial court to avoid considering the testimony elicited during his codefendant's jury trial, in deciding upon his (White's) guilt.

Initially, we note that defense counsel failed to object at trial and in his post-trial motion to the procedure used. Defendant therefore has waived this objection and is precluded from raising it on appeal. *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.

Defendant White urges that the procedure used constituted plain error and, therefore, we may properly review the matter despite defendant's failure to object. (See 73 Ill. 2d R. 615(a).) The purpose of the plain-error exception to the waiver doctrine is to avoid the possibility that an innocent person may have been convicted due to some error which is obvious from the record but not properly preserved. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.) Thus, when the evidence is closely balanced, a court of review may properly consider errors that have not been properly preserved for review. 79 Ill. 2d 564, 576; *People v. Pickett* (1973), 54 Ill. 2d 280, 283, 296 N.E.2d 856.

■■ Disregarding the unfavorable evidence elicited by Shaw's counsel pertaining to White, the State still had an overwhelming amount of evidence against White. The plain-error doctrine, therefore, is inapplicable and defendant White has waived any objection to the issue.

■■ Furthermore, a trial judge is presumed only to consider competent

evidence. (*People v. Glanton* (1975), 33 Ill. App. 3d 124, 145, 338 N.E.2d 30; *People v. Collins* (1974), 21 Ill. App. 3d 800, 805, 315 N.E.2d 916.) In order to rebut this presumption, there must be an affirmative showing on the record that the court actually used the improper evidence. (See *People v. Martinez* (1979), 76 Ill. App. 3d 658, 395 N.E.2d 124; *People v. Conwell* (1978), 64 Ill. App. 3d 995, 382 N.E.2d 64.) In the instant case, defendant White makes no showing that the trial judge considered any improper evidence. Rather, he merely alleges that the trial judge may have considered such evidence.

We now turn to the issues raised by defendant Shaw. He first contends that the trial court erred in permitting the State on redirect examination to elicit testimony regarding a photographic identification which had not been asked about on redirect or cross-examination. A more detailed recitation of the facts is essential to explain this contention.

During cross-examination by defendant Shaw's defense counsel, Lillian Farmer identified photographs of Robert Craig and Ricardo White as two photographs she had identified in her home shortly after the shooting. On direct examination, the State had not asked Farmer whether she previously had identified Philip Shaw. On redirect, the State asked Farmer whether she had identified a photograph of Philip Shaw at a hearing on a motion to suppress identification held on November 9, 1978. Defense counsel sought to prohibit the State from questioning Farmer about any identification other than the identification she had been questioned about on cross-examination.

Counsel argued that since the November 9, 1978, identification of Shaw had not been brought up in direct or in cross-examination, it was beyond the scope of redirect examination. The trial court ruled that by questioning Farmer on cross-examination about her photographic identification of defendant Shaw, defense counsel opened the door to further questioning on redirect regarding such identification. Farmer then indicated that she had identified a photograph of defendant Shaw at the November 9 hearing.

■■ The State has a right to question a witness on redirect examination about matters brought out for the first time on cross-examination. (*People v. Nally* (1979), 75 Ill. App. 3d 762, 764, 394 N.E.2d 776; *People v. Miller* (1978), 58 Ill. App. 3d 156, 161, 373 N.E.2d 1077.) The scope of redirect examination is within the discretion of the trial judge. (75 Ill. App. 3d 762, 764.) In our judgment, the trial court properly ruled that defense counsel had opened the door on cross-examination. The court did not abuse its discretion in allowing the State to attempt to clarify Farmer's testimony as to whether she had previously identified defendant Shaw.

Additionally, defendant Shaw argues that the trial court erred in

ordering his attorney to refrain from making objections while defendant White's attorney was conducting cross-examination of one of the State's witnesses. The trial court said:

> "Now, Mr. Gribben, Mr. Kulis is cross-examining. I'm not going to permit you to whipsaw me. If he has an objection, let him make it. You keep quiet, please."

■■ ■ It is the duty of the presiding judge to insure that orderly proceedings are conducted and proper decorum is maintained in the courtroom. (See generally *People v. Dorn* (1977), 46 Ill. App. 3d 820, 361 N.E.2d 353.) The trial judge has wide discretion in maintaining order in the courtroom. (See generally *People v. Long* (1968), 39 Ill. 2d 40, 233 N.E.2d 389; *People v. Dixon* (1976), 36 Ill. App. 3d 247, 343 N.E.2d 583.) Here, defendant Shaw's jury trial was conducted simultaneously with defendant White's bench trial, and there were three attorneys representing the two defendants. Because of the potential for confusion in the proceeding, it was imperative that the judge take certain steps to maintain order and control. In our opinion, the trial judge properly exercised his discretion in ordering one defense attorney to remain silent while the other was cross-examining the State's witness.

For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

Judgments affirmed.

GOLDBERG and O'CONNOR, JJ., concur.