187 Ill. App.3d 970 (1989)
543 N.E.2d 969
In re T.O., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
T.O., a Minor, Respondent-Appellant).
No. 1-87-0285.
Illinois Appellate Court  First District (2nd Division).
Opinion filed August 29, 1989.
*971 Randolph N. Stone, Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellant.
Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, LaCoulton Walls, and Martin A. Dolan, Assistant State's Attorneys, of counsel), for the People.
Judgment affirmed.
JUSTICE DiVITO delivered the opinion of the court:
In this appeal, the minor-respondent, T.O., challenges the jurisdiction of the circuit court because of the failure to formally serve him with a summons and the petition. He also contends that the court erred in finding him delinquent.
Respondent, then age 15, was the subject of a petition for adjudication of wardship for theft, attempted murder, two counts of aggravated battery, and unlawful use of a weapon. When arraigned on November 24, 1986, respondent, his mother, and his stepfather were present. At the arraignment, the court appointed the public defender as respondent's attorney and noted the presence of his mother in court. The public defender accepted the appointment and stipulated to the court's jurisdiction over respondent.
The record does not indicate that respondent was served with a copy of the petition. However, on the date of the arraignment, respondent's mother signed a circuit court form which waived service of the petition and summons, waived any defects in service of process, and consented to the jurisdiction of the juvenile court "on behalf of the above named minor, [T.O.], and myself, [Aquinta O.]"
On December 23, 1986, both of respondent's parents were in court and both were given copies of the petition. On that day, the *972 court heard and denied respondent's motion to quash arrest and to suppress evidence. The court then began a hearing on respondent's motion to suppress statements. On December 26, with respondent and his mother in court, that motion was denied and the adjudicatory hearing began.
The evidence showed that on November 22, 1986, Anthony Robles, while off duty as a Chicago police officer, was working as a security guard at McCrory's department store. After 6 p.m., respondent and Steve Jackson entered McCrory's and went to the rear of the store. Robles observed respondent, who wore a red, hooded windbreaker, put sweaters into a yellow bag.
After Jackson walked out the door, respondent started to leave McCrory's with a bag of clothing without paying. Robles approached him in the vestibule, between the inner and outer doors of the store, identified himself as a police officer and asked respondent what was in the bag. Respondent dropped the bag and ran out the door. Robles ran after him and grabbed him by the hood of his jacket. The jacket ripped and respondent again fled. Robles again stopped him in McCrory's parking lot. This time respondent turned and faced Robles and swung at him, but missed. According to Robles, respondent then reached behind his back, whereupon Robles, believing that respondent was reaching for a weapon, instinctively pulled out his police revolver. Robles struck respondent on the left side of the head with his revolver. Respondent swung again. Robles then grabbed respondent and tried to hold him.
At that point, Robles was tackled from behind by Jackson and there was a two-on-one struggle witnessed by Martha Rodriguez, a cashier at McCrory's. During the struggle, respondent struck and grabbed Robles' face. Respondent then struck Robles' forearm and attempted to wrestle the gun free from his grip. As Robles tried to hold onto his gun, respondent struck his head, allowing Jackson to pull the gun free. Robles was unable to recover the gun, as his arm was held by respondent. As he tried to recover the gun with his other arm, Jackson pulled the trigger. The bullet hit Robles' wrist and he fell to the ground.
As Robles tried to get up, Jackson approached him from his front side and pointed the gun at his face. Respondent stood nearby and watched. Robles stated, "Don't shoot, I'm a Chicago police officer." Robles testified that he did not recall whether respondent did or said anything at this point. Robles and respondent testified that Jackson moved closer and stated, "I'll shoot you punk."
Respondent, who stated that he had not wrestled with Robles, testified *973 that he told his friend not to shoot. Martha Rodriguez testified she was unable to say whether respondent said anything but that he stood next to the other two. All testified that Jackson then fired the gun. The bullet hit Robles' shoulder and lodged in his neck. Unable to break his fall, Robles fell to the ground, hitting his face. Both Robles and Rodriguez testified that the two young men ran from the scene. Respondent testified that his friend yelled as they ran, "at least we got a pistol out of this."
That same evening, at about 11 p.m., Officer John Scalise entered Jackson's home, where a party was in progress. As he entered, he saw respondent in the front room carrying the same type of red jacket he had been told one of the offenders was wearing at the time of the shooting. When respondent noticed Scalise, he ran through the apartment. Scalise pursued him into the back bathroom, where he observed respondent sticking his jacket underneath a pile of clothes. Scalise pulled respondent out of the bathroom, advised him of his constitutional rights, and placed him under arrest.
The hearing was concluded on December 29, 1986. Respondent was found delinquent of theft, attempted murder, two counts of aggravated battery, and unlawful use of a weapon. On January 21, 1987, at the dispositional hearing, respondent was committed to the custody of the Illinois Department of Corrections.

I
Neither the common-law record nor the transcript of proceedings indicates that respondent was served with a summons or a copy of the petition as required by section 2-15 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 802-15). Respondent argues that since he was not served, the circuit court was without jurisdiction to proceed on the delinquency petition. The State maintains that respondent was afforded sufficient notice and, moreover, waived the present jurisdiction challenge by appearing and then stipulating to the court's jurisdiction.
 1 In this case, the basic requirements of due process and fairness, as enunciated by the United States Supreme Court in In re Gault (1967), 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428, were satisfied by the circuit court. Section 2-15 of the Juvenile Court Act, in its provisions relating to service upon minors, custodians, and legal guardians, provides a method for implementing the due process requirement of appropriate notice in juvenile proceedings. However, where a juvenile appears before the court and participates in proceedings, he waives the formality of service of process and voluntarily submits *974 to the jurisdiction of the court. (People v. D.J. (1988), 175 Ill. App.3d 491, 529 N.E.2d 1048; People v. Land (1988), 169 Ill. App.3d 342, 523 N.E.2d 711.) The same waiver rule applies to parents. In re J.W. (1981), 87 Ill.2d 56, 429 N.E.2d 501; In re T.A. (1989), 181 Ill. App.3d 1034, 537 N.E.2d 1118.
 2 In the case at bar, respondent appeared in response to a juvenile petition alleging delinquent acts; he was represented by counsel; he made no objection to the court's jurisdiction; his parents had actual notice and attended many of the proceedings; and he participated fully in the proceedings. He has thus waived any challenge to the court's jurisdiction. People v. D.J., 175 Ill. App.3d 491, 529 N.E.2d 1048; People v. Land, 169 Ill. App.3d 342, 523 N.E.2d 711.

II
Respondent argues that though the evidence may show that he was guilty of theft, the evidence does not support a finding of delinquency for attempted murder, aggravated battery, and unlawful use of a weapon. He contends "there was no evidence to show respondent possessed the requisite specific intent to promote or facilitate the commission of the attempted murder, aggravated battery and unlawful use of weapons offenses."
 3 A person's guilt may be established under the theory of accountability when it is shown that:
"(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5-2(c).)
A person is not accountable if it is shown that:
"(3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense." Ill. Rev. Stat. 1985, ch. 38, par. 5-2(c)(3).
Although accountability may be proven by circumstantial evidence (People v. Manley (1971), 1 Ill. App.3d 693, 274 N.E.2d 373), mere presence or negative acquiescence alone is not enough to render a defendant accountable for a crime. (People v. Shaw (1981), 98 Ill. App.3d 682, 424 N.E.2d 834.) However, when evidence, as here, shows that a defendant was present at the scene of the crime without opposing *975 it, the trier of fact may competently consider this conduct with other circumstances in determining whether a defendant should be held accountable. People v. Shaw (1981), 98 Ill. App.3d 682, 686, 424 N.E.2d 834.
 4 Furthermore, when a person is shown to have been present at the crime without disapproving or opposing it, the trier of fact may consider this conduct and all the other circumstances and conclude that he assented to the commission of the crime and, therefore, aided and abetted the crime. (In re Gonzalez (1981), 95 Ill. App.3d 750, 420 N.E.2d 720.) A person is accountable even though he did not participate in the overt act; if he shares the same intent to accomplish an unlawful purpose, the requisite intent exists. People v. Kessler (1974), 57 Ill.2d 493, 315 N.E.2d 29; People v. Cole (1964), 30 Ill.2d 375, 196 N.E.2d 691.
The cases cited by respondent, in support of his assertion that he was merely "there" but not accountable, are inapplicable to this case. The evidence in People v. Tillman (1971), 130 Ill. App.2d 743, 265 N.E.2d 904, showed that the defendants were not present at the time and place of the acts of others which constituted robbery, attempted murder, and murder. (People v. Tillman (1971), 130 Ill. App.2d 743, 749, 265 N.E.2d 904.) In fact, the evidence showed they were unwilling to participate or assist the others in the commission of those offenses. (People v. Tillman (1971), 130 Ill. App.2d 743, 750, 265 N.E.2d 904.) Likewise, in People v. Barnes (1924), 311 Ill. 559, 143 N.E. 445, the evidence showed that the defendant was not present at the commission of the crime, but near the area. The evidence failed to show he participated in the crime. People v. Barnes (1924), 311 Ill. 559, 563, 143 N.E. 445.
Respondent's reliance on People v. Ramirez (1968), 93 Ill. App.2d 404, 236 N.E.2d 284, is likewise misplaced. In that murder case, the defendant merely stayed temporarily in an apartment in which a body was tied and bound and which made no sounds. (People v. Ramirez (1968), 93 Ill. App.2d 404, 410, 236 N.E.2d 284.) Ramirez's alleged conduct was not shown to have occurred either before or during the commission of the murder; his mere presence was not enough to establish accountable guilt. People v. Ramirez (1968), 93 Ill. App.2d 404, 410, 236 N.E.2d 284.
 5 This court has construed section 5-2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 5-2(c)) as incorporating the long-established "common-design rule," which provides that "where two or more persons engage in a common criminal design or agreement, any acts in the furtherance thereof committed by one party are *976 considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts." People v. Terry (1984), 99 Ill.2d 508, 514, 460 N.E.2d 746, citing People v. Kessler (1974), 57 Ill.2d 493, 496-97, 315 N.E.2d 29.
 6 In People v. Dotson (1986), 143 Ill. App.3d 135, 492 N.E.2d 903, for example, the defendant stood near a victim, shot by his partner, who had announced a stickup. Afterwards the two men fled together. The defendant was found guilty of aggravated battery and of armed robbery, a specific intent crime, under the theory of accountability. The court held that accountability could be established "through a person's knowledge and participation * * * in the criminal act." People v. Dotson (1986), 143 Ill. App.3d 135, 142, 492 N.E.2d 903.
 7 In this case, the evidence shows that respondent engaged in a scheme to steal clothing; engaged in a violent struggle with Robles after committing a theft in McCrory's department store; restrained Robles' arm while his companion discharged a bullet which hit him; and stood idly by when his companion shot Robles in the neck, causing severe nerve impairment. Though he did not personally pull the trigger of the gun, he is responsible for all acts committed in furtherance of the common design. (People v. Terry (1984), 99 Ill.2d 508, 460 N.E.2d 746.) Finally, the evidence does not show that respondent did any affirmative act to terminate the commission of the theft or to stop the scuffle and shooting during the escape attempt. Even if his own testimony is fully credited, he used mere words in his failed attempt to stop Jackson from shooting Robles the second time.
The judgment of the circuit court is affirmed.
Affirmed.
HARTMAN and SCARIANO, JJ., concur.