THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD HAWKINS, Defendant-Appellant.

First District (1st Division)    No. 1—95—2698

Opinion filed November 12, 1996.

Steven A. Greenberg, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Edward Hawkins was found guilty of aggravated possession of a stolen motor vehicle and possession of burglary tools. Martin Wtu-

lich, who was charged in the same information as defendant, was tried separately and is not a party to this appeal. The trial court sentenced defendant to 36 months of probation and seven days of the Sheriff's Work Alternative Program. The trial court also ordered defendant to pay $10,000 in restitution to the victim. Defendant now appeals his conviction and the order of restitution.

The record on appeal indicates the following facts. During jury selection, the trial court asked a panel of potential jurors *en masse* questions regarding whether they understood that defendant was presumed innocent, that the burden of proof was on the State and that the defendant was not required to present a defense. The trial court also asked the group whether they could be fair and impartial jurors.

Following jury selection and opening statements, John Schiele testified that he was the owner of West Lake Motors in Elmhurst, Illinois. Schiele testified that on May 23, 1994, he contacted the police to report that a dark green and tan 1994 BMW 740il had been stolen from his lot. The car retailed for approximately $64,000. Schiele also stated that he found a door lock lying on the ground where the car had been parked.

Schiele testified that he next saw the car again approximately $2^1/_2$ weeks later, at the repair shop that did work for the dealership. According to Schiele, the left front wheel was turned backward, the driver's side door lock and ignition lock tumbler were removed, and the hood, fenders and doors were damaged. The windows, passenger's side door lock and trunk lock were intact. Schiele admitted that many people at the dealership had access to the car and could have driven the car. Schiele testified, however, that he had never seen defendant at the dealership and had not given him permission to remove the car from the lot.

Chicago police officer Kenneth Moore testified that on May 28, 1994, he and his partner were patrolling near the intersection of North and Wood in Chicago when he saw a beat car in pursuit of a green BMW travelling eastbound on North Avenue. Officer Moore's partner, who was driving their patrol car, attempted to curb the green BMW, but the car turned south on Wood Street. The left front part of the green BMW struck another car almost immediately. The driver of the BMW, whom Officer Moore identified as Mr. Wtulich, exited the car and began running northward on Wood Street. The passenger, whom Officer Moore identified as defendant, fled southward on Wood Street.

After checking with the officer in the other beat car, Officer Moore used his radio to broadcast a flash message, then accompanied

his partner in a search for Wtulich. Officer Moore and his partner caught Wtulich, from whom they learned an address. Officer Moore then returned to the green BMW. Officer Moore observed that a door lock had been removed and the ignition had been "pulled." Officer Moore also observed a screwdriver on the seat of the vehicle, which Officer Moore was able to use to start the car. Officer Moore took the green BMW to the police station.

When Officer Moore arrived at the police station, other officers brought defendant to him. Officer Moore testified that he interviewed defendant in the presence of two other officers. Officer Moore informed defendant of his *Miranda* rights; defendant stated that he understood them. Officer Moore then questioned defendant about the green BMW. Defendant stated that approximately a week earlier, past midnight on a Sunday, he had gone to West Lake Motors, entered the lot, punched out the lock and ignition, used a screwdriver to start the car and drove it from the lot.

On cross-examination, Officer Moore stated that he did not personally know whether anyone other than he had started the car with the screwdriver found in the car. Officer Moore admitted that he did not show the screwdriver recovered from the car to defendant. Officer Moore also admitted that he did not take a written or videotaped statement from defendant. Officer Moore also testified that because defendant was the passenger in the car, he would need a confession or an eyewitness to secure a conviction.

Following the admission of the State's exhibits, the State rested. Defendant moved for a directed finding. The trial court denied the motion. Defendant rested without presenting evidence.

Defendant renewed his motion for a directed finding at the conclusion of the jury instruction conference. The trial court denied the motion. Following closing arguments, jury instructions and deliberations, the jury found defendant guilty of aggravated possession of a stolen motor vehicle and possession of burglary tools.

The trial court denied defendant's post-trial motion on May 9, 1995. The trial court later sentenced defendant to 36 months of probation and seven days of the Sheriff's Work Alternative Program. The trial court also ordered defendant to pay $10,000 in restitution to the victim. On May 23, 1995, the trial court denied defendant's motion to reconsider the issue of restitution. Defendant now appeals his conviction and the order of restitution.

I

■ Defendant contends that the trial court erred in denying his motion for a directed finding. A defendant's motion for a directed

finding requires the trial court to consider whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in the light most favorable to the State. *People v. Withers*, 87 Ill. 2d 224, 429 N.E.2d 853 (1981). Defendant was convicted of aggravated possession of a stolen motor vehicle; the relevant statute provides that it is unlawful for

"a person not entitled to the possession of a vehicle having a value of $25,000 or greater to receive, possess, conceal, sell, dispose or transfer the vehicle, knowing that the vehicle has been stolen or converted[.]" 625 ILCS 5/4—103.2(a)(3) (West 1992).

Defendant contends that the State failed to introduce any evidence that the 1994 BMW stolen from West Lake Motors was the same BMW observed by Officer Moore.

In this case, the record shows that on May 23, 1994, Schiele reported that a green and tan 1994 BMW 740il worth $64,000 was stolen from his lot. Schiele also stated that he did not give defendant permission to remove the car from the lot. Officer Moore testified that on May 28, 1994, defendant admitted that he took the green BMW Officer Moore observed from the lot of West Lake Motors after midnight of the previous Sunday. Taking judicial notice of calendar dates and corresponding days of the week (*Roberts v. Sisters of Saint Francis Health Services, Inc.*, 198 Ill. App. 3d 891, 902, 556 N.E.2d 662, 669 (1990)), it should be noted that the Sunday prior to May 28, 1994, was May 22, 1994.

Schiele testified that a door lock was lying on the ground of the lot where the car was located before it was stolen. The BMW Officer Moore observed was missing a door lock. Schiele testified that he saw the BMW that was stolen from his lot shortly after May 28, 1994; it was not only missing a door lock, but also had damage to its fenders and hood. Officer Moore observed the green BMW in defendant's possession crash, particularly the left front fender of the car. Defendant told Officer Moore that he punched out the lock and ignition and used a screwdriver to start the car. The BMW Officer Moore observed had the ignition "pulled." Officer Moore found a screwdriver in the BMW in defendant's possession.

Defendant relies on *People v. Fernandez*, 204 Ill. App. 3d 105, 561 N.E.2d 1131 (1990), and *People v. Hope*, 69 Ill. App. 3d 375, 387 N.E.2d 795 (1979). However, in neither of these cases did the defendant admit that he broke into a car, used a screwdriver to start the vehicle and drove it away. The facts of this case are much closer to those in *People v. Ambrose*, 171 Ill. App. 3d 87, 525 N.E.2d 536 (1988), in which this court affirmed a conviction based on the testimony of the victim and police testimony of defendant's admissions.

In sum, viewing the record in the light most favorable to the State, the testimony of the car's owner and defendant's statement to Officer Moore are sufficient that a reasonable mind could fairly conclude that the green BMW observed by Officer Moore, which defendant admitted taking from West Lake Motors after midnight on May 22, 1994, was the very same BMW Schiele reported stolen later on May 23, 1994. Accordingly, the trial court did not err in denying defendant's motion for a directed finding.

## II

■ Defendant also argues that he was denied a fair trial due to improper comments made by the State during closing and rebuttal arguments. It is well established that improper remarks do not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200, 1205 (1979). The test for measuring prejudice resulting from closing argument is straightforward: the prejudice must be substantial enough that, in its absence, the verdict would have been different. *E.g., People v. Morgan*, 112 Ill. 2d 111, 492 N.E.2d 1303 (1986). Each case must be decided on its own facts. *Baptist*, 76 Ill. 2d at 29, 389 N.E.2d at 1205. Defendant identifies two comments that allegedly caused substantial prejudice; this opinion addresses each in turn.

First, defendant objects to the prosecution's reference to his attorney as a "paid advocate." It is improper to refer to defense counsel as a "hired gun." *People v. Everette*, 220 Ill. App. 3d 453, 458, 581 N.E.2d 109, 111 (1991); *People v. Shaw*, 98 Ill. App. 3d 682, 685, 424 N.E.2d 834, 837 (1981). The term "paid advocate," while slightly less pejorative than the term "hired gun," nevertheless denigrates the assistance of counsel to which the accused is constitutionally entitled and thus falls within the scope of *Everette* and *Shaw*.

Yet this court held in both *Everette* and *Shaw* that the improper comments did not warrant reversal of the respective convictions, not only due to the weight of the evidence in those cases, but also because the trial court in each case sustained objections to the improper comments and admonished the jury to disregard them.

The State argues that the improper comment was harmless because it was fleeting and did not directly charge the defense attorney with any impropriety. The State relies on *People v. Murillo*, 225 Ill. App. 3d 286, 297, 587 N.E.2d 1199, 1207 (1992), and *People v. Rodriguez*, 134 Ill. App. 3d 582, 592, 480 N.E.2d 1147, 1153 (1985). However, in *Murillo*, the trial court sustained an objection to the State's reference to the fact that defense counsel paid for a gunshot

residue test. In *Rodriguez*, the State improperly impugned defense counsel, but not by noting that he or she was paid. Moreover, the court concluded in *Rodriguez* that the evidence of guilt was overwhelming.

■ *Everette, Shaw, Murillo* and *Rodriguez* stand for the proposition that this sort of improper comment will not warrant a reversal where the evidence is overwhelming or the trial court promptly sustains an objection to the comment. In this case, the trial court overruled the defense objection. Moreover, while the evidence in this case is sufficient to convict, it is not overwhelming. As noted by the defense, the State did not present evidence of the automobile's identification number, the chain of custody of the car was not strong and the identification testimony regarding the car was somewhat vague. These weaknesses are particularly glaring in a case where such evidence would have been easy to present. Given the record on appeal, we are compelled to conclude that this comment was not harmless.

■ Moreover, defendant contends that the State improperly commented on the fact that defendant did not testify. An accused has a constitutional right not to testify as a witness in his own behalf and the prosecutor cannot directly or indirectly comment on the exercise of that right. *People v. Arman*, 131 Ill. 2d 115, 125-26, 545 N.E.2d 658, 663 (1989). However, the State may describe the State's evidence as uncontradicted, even though the defendant is the only one who can contradict it, as long as the comments are not intended to direct the jury's attention to the defendant's silence. *People v. Leonard* (1988), 171 Ill. App. 3d 380, 386, 526 N.E.2d 397, 401 (1988). When determining whether the accused's right not to testify has been violated, a reviewing court examines the challenged comments in the context of the entire proceeding. *Arman*, 131 Ill. 2d at 126, 545 N.E.2d at 663.

The passage defendant objects to reads as follows:

"Now, the Defendant has exercised his rights here, and he has basically chosen not to plead to this particular charge because he doesn't want to accept responsibility for what he has done.

Well, as voices of the community, you must show him that he is going to be responsible for his actions. He is an adult. If he steals a car, he is going to be held responsible. He can't get up here and tell you that it was the other guy, I didn't know what was going on because—

MR. GREENBERG [Defense Counsel]: Objection, Judge.

THE COURT: Counsel may argue.

MR. HUGHES [The State]: —that simply isn't what the facts bare [*sic*] out. The facts bare [*sic*] out that he knew the car was

stolen, that he stole the car, that he ran from the police. Simply, the facts bare [*sic*] his guilt."

The transcript of proceedings also includes a sidebar in which defense counsel explicitly argued that the State improperly commented on defendant's failure to testify. The trial court ruled that the comment referred to defense counsel, not the defendant; accordingly, the objection was again overruled.

However, as defense counsel notes on appeal, substituting "defense counsel" for the references to "he" or "him" in the transcript would have produced the following argument:

"Now, the Defendant has exercised his rights here, and [defense counsel] has basically chosen not to plead to this particular charge because [defense counsel] doesn't want to accept responsibility for what he has done.

Well, as voices of the community, you must show him that [defense counsel] is going to be responsible for his actions. [Defense counsel] is an adult. If [defense counsel] steals a car, [defense counsel] is going to be held responsible. [Defense counsel] can't get up here and tell you that it was the other guy, I didn't know what was going on because—

MR. GREENBERG [Defense Counsel]: Objection, Judge.

THE COURT: Counsel may argue.

MR. HUGHES [The State]: —that simply isn't what the facts bare [*sic*] out. The facts bare [*sic*] out that [defense counsel] knew the car was stolen, that [defense counsel] stole the car, that [defense counsel] ran from the police. Simply, the facts bare [*sic*] [defense counsel's] guilt."

■ This court cannot conclude that the State's references to "he," "him" or "his" referred to defense counsel. Viewed in the context of the transcript, the State begins by expressly referring to "Defendant." We cannot conclude that the State actually was arguing that defense counsel "stole the car." Indeed, if the State believed defense counsel was responsible for the crime, the question would arise as to why the State was prosecuting defendant instead.

Accordingly, we conclude that the State's comment was similar to those held improper in *People v. Burton*, 44 Ill. 2d 53, 254 N.E.2d 527 (1969). The *Burton* court held that the State had specifically referred to the defendant's failure to testify by stating that "*he's* got to explain the blood on the pants*" and by pointing out that there was no explanation "from *him*" as to the source of the bloodstains. (Emphases in original.) *Burton*, 44 Ill. 2d at 57, 254 N.E.2d at 528. Nor was this comment harmless, given that the objection was overruled and the evidence less than overwhelming.

In sum, the State here improperly commented on subjects that

fall well within the scope of the rights of the accused guaranteed by the fifth, sixth and fourteenth amendments to the constitution. We are compelled to remind the prosecutors once again that their duty to protect the rights of the people of Illinois includes the duty to safeguard these rights of the accused. *Rodriguez,* 134 Ill. App. 3d at 592, 480 N.E.2d at 1153. This case must be reversed and remanded for a new trial.

### III

Defendant also raises issues relating to jury selection and the restitution order entered in this case. However, it is not at all clear that these issues are likely to arise on retrial. Thus, we decline to address them at this time.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded for a new trial.

Reversed and remanded.

BUCKLEY and WOLFSON, JJ., concur.