2025 IL App (1st) 231562-U

No. 1-23-1562

Order filed May 30, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 00492 |
| | ) | |
| JAMIL HARRIS, | ) | Honorable |
| | ) | John F. Lyke, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for attempted first degree murder is affirmed where (1) the circuit court did not abuse its discretion in admitting defendant's mug shots into evidence and allowing the jury to view the mug shots during its deliberation and (2) the prosecutor's comments during rebuttal closing argument were not clear and obvious error under the plain error doctrine.

¶ 2    Defendant Jamil Harris appeals his conviction for attempted first degree murder. 720 ILCS 5/8-4(a) (West 2014); 720 ILCS 5/9-1(a)(1) (West 2014). On appeal, defendant raises two issues. First, did the circuit court abuse its discretion in allowing the State to present evidence of defendant's mug shots from a prior arrest or by allowing the jury to view the mug shots during its deliberation? Second, did the State commit misconduct during its rebuttal closing argument

entitling defendant to a new trial under the plain error doctrine? For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     In 2015, Patrick Mitchell lived in the Cottage Grove Heights neighborhood of Chicago, Illinois. He owned a boat which he kept parked three blocks away from his home. In October, Mitchell's son showed him an Instagram video in which two men were on the back of the boat without Mitchell's permission. Mitchell recognized them as men who lived in his neighborhood, but he knew them only by their nicknames of Wale and Chop. A few days later, Mitchell encountered Chop and talked to him about the Instagram video.

¶ 5     On the morning of October 19, 2015, Mitchell drove to Woodlawn Marketplace. As Mitchell pulled into a parking spot in front of the store, he saw defendant Jamil Harris, who Mitchell knew as Wale. Defendant was standing six feet away from Mitchell next to the store's front door. While Mitchell was still parking his vehicle, defendant entered Woodlawn Marketplace and then came back outside with a firearm in his hand. Defendant shot Mitchell a total of seven times in his head, arm, and back. Mitchell left the parking lot and drove to Trinity Hospital, where he received medical treatment. Mitchell was transferred to Christ Hospital where he underwent surgery and was put into a medically-induced coma.

¶ 6     Defendant was charged with attempted first degree murder, aggravated battery, and aggravated discharge of a firearm, but the State proceeded only with the attempted first degree murder charge. Before trial, both parties filed motions *in limine* regarding defendant's 2014 arrest for drinking on the public way. The circuit court held that the State could not inform the jury of

the specific offense defendant was arrested for, but that "the rest of it is coming in" because it was relevant to "defendant's identification."

¶ 7    At trial, Mitchell testified regarding the shooting and the events leading up to it as recounted above. Mitchell also testified that on October 28, 2015, he spoke with detectives at the police station and, after viewing a photo array, identified defendant as the shooter. Mitchell was impeached with prior statements he had given regarding where defendant was standing when he shot Mitchell and as to whether detectives had shown Mitchell a picture of defendant while he was still at Christ Hospital, before he identified defendant at the police station.

¶ 8    Detective Arthur Davis testified that a few days after the shooting, he and another detective visited Mitchell at Christ Hospital and spoke to him about the shooting. Mitchell told the detectives about the Instagram photo and that he recognized both men in the photo as people from his neighborhood. However, Mitchell told the detectives that he only knew the nickname of one of the men, Chop, and did not provide the detectives with a nickname for the shooter. Detective Davis denied showing Mitchell a photograph of defendant while at the hospital. He testified that "[b]ased on the information received from Patrick Mitchell and a description of the offender, we were able to go through the Chicago Police database system in order to find a possible suspect from that particular incident." Detective Davis also testified that after Mitchell was released from the hospital, he identified defendant as the shooter from a photo array at the police station.

¶ 9    The State entered surveillance footage from Woodlawn Marketplace at the time of the shooting into evidence. The video shows a man entering and exiting the store multiple times but does not show him holding or discharging a firearm. A store employee, Joe Terry, testified that he was working at the time of the shooting but did not see who fired the gun because he ducked behind

the counter when he heard gunshots. Terry knew defendant because defendant visited the store every day, and he identified defendant as the man in the surveillance video.

¶ 10    Officer Jason Toliver testified that on December 5, 2014, he encountered defendant and wrote him up for an "administrative violation." At one point during Officer Toliver's testimony, he stated that the "arrest report" would refresh his recollection of defendant's address. Defense counsel objected, and the circuit court told the jury to "disregard the statement arrest report." The State introduced defendant's 2014 mug shots into evidence, which Officer Toliver described as "our booking photos for the police department." The State rested.

¶ 11    Defendant called Balinda Williams-Lee, a retired Chicago police officer, who testified that she heard gunshots while she was at a nail shop near Woodlawn Market. She did not witness the shooting, but when she looked outside afterwards she saw a "chaotic" scene with "people running around." She saw a black man, around six feet tall and 25 to 29 years old, running from the scene. She only saw the man from behind and was unable to identify him as the shooter.

¶ 12    Dr. Deryn Strange was qualified as an expert in cognitive psychology and memory distortion. She testified that memory is reconstructive and can be impacted by subsequent information. She also testified that between 40 and 60 percent of the time individuals misidentify perpetrators as people with whom they are familiar.

¶ 13    The jury found defendant guilty of attempted first degree murder and of personally discharging a firearm that proximately caused great bodily harm to another person. The circuit court denied defendant's motion for a new trial and sentenced defendant to 31 years in prison. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Mar. 12, 2021).

¶ 14                                    II. ANALYSIS

¶ 15                              A. Mug Shot Evidence

¶ 16    Defendant argues that the circuit court abused its discretion in permitting Detective Davis's testimony that he obtained defendant's photos from the Chicago police database and Officer Toliver's testimony as to the existence of an "arrest report" and "booking photos" in violation of its previous ruling on the parties' motions *in limine*. Defendant also contends that the circuit court abused its discretion in allowing the jury to consider defendant's mug shot photos during its deliberation. Defendant argues that these errors denied him a fair trial because the mug shots were inadmissible other-crimes evidence.

¶ 17    "Evidence of other crimes in which a defendant may have participated is not admissible to show the defendant's propensity to commit crime." *People v. Coleman*, 158 Ill. 2d 319, 333 (1994); see Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, such evidence is admissible if it is "relevant for any other purpose," such as identification. *Coleman*, 158 Ill. 2d at 333. Therefore, while generally "mug shot evidence tending to inform the jury of a defendant's commission of other, unrelated criminal acts should not be admitted," when "identification is a material issue at trial, testimony relating [to] the use of mug shots in an investigation may be introduced to show how a defendant was initially linked to the commission of an offense." *People v. Nelson*, 193 Ill. 2d 216, 224 (2000); *People v. Arman*, 131 Ill. 2d 115, 123 (1989). A circuit court's evidentiary rulings are reviewed for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 18    Defendant had been arrested for drinking on the public way in December 2014. While processing the arrest, the Chicago Police Department took front and profile mug shots of defendant and recorded defendant's address. Both parties filed motions *in limine* regarding defendant's 2014 arrest for drinking on the public way and the resulting mug shots. The State sought to admit the mug shots and the address defendant provided when he was arrested because "defendant's appearance and address from his 2014 arrest are highly probative and go directly to the shooter's identity, which will be the heart of the issues in this trial." The State argued that defendant's mug shots were relevant because defendant's front mug shot was used in the photo array where Mitchell identified defendant as the shooter, and defendant's appearance in the mug shots matched the appearance of the man in the Woodlawn Marketplace surveillance footage at the time of the shooting. The State contended that defendant's address was relevant because he lived directly behind Woodlawn Marketplace. Defendant argued that this evidence should be barred because defendant's 2014 arrest had "no relevant connection to the currently charged offense and merely maligns Mr. Harris' character in a manner prohibited by the Illinois Rules of Evidence."

¶ 19    The circuit court ruled that the State could not inform the jury of the specific crime for which defendant was arrested, but could otherwise present evidence of the mug shots and defendant's address because they were relevant to the issue of defendant's identification:

> "Court rules as follows. The drinking on a public way, you can't say that. You can say administrative reason or whatever, don't say what the actual offense was, but the rest of it is coming in. I believe that goes to weight, not admissibility.
>
> It goes towards this defendant's identification. It is up to the jury to determine whether or not he looked the way he did back then as well as on the date in question.

***

It is granted in part and stricken in part as far as you can't tell that he was arrested for drinking on a public way."

¶ 20    Mug shot evidence is admissible if its probative value relating to a material issue at trial, such as identification, outweighs the evidence's prejudicial impact on defendant. See, *e.g.*, *People v. Oliver*, 306 Ill. App. 3d 59, 72-73 (1999) (holding that mug shots were admissible where "identification was a material issue" and "the probative value of the photo array outweighed undue prejudice"); *People v. Watkins*, 293 Ill. App. 3d 496, 504 (1997) (finding "no error in the admission of the mug shot photo" where identification was an issue at trial); *People v. Hughes*, 257 Ill. App. 3d 633, 639 (1993) (holding that mug shots "may be admitted where they are probative of the issue of a defendant's identity and the manner in which an identification was made"); *People v. Robinson*, 125 Ill. App. 3d 1077, 1079 (1984) ("While 'mug shots' suggest other criminal activity, they may nonetheless be admitted where they are probative of the issue of defendant's identity and the manner in which an identification is made" and especially where misidentification is a primary issue at trial); *People v. Longstreet*, 23 Ill. App. 3d 874, 881 (1974) ("In general, police mug shots are not held to be prejudicial as constituting evidence of other offenses where they are relevant to the issue of identity."). While defendant points to cases in which courts have held the admissibility of mug shot evidence constituted error, those cases are distinguishable.

¶ 21    In *Arman*, the court held that the introduction of mug shot evidence suggesting defendant's involvement in unrelated offenses constituted harmless error. *Arman*, 131 Ill. 2d at 124. In *Nelson*, in a closely balanced case, the court held that the introduction of mug shot evidence inviting "jury speculation as to what might have led to three separate arrests (including one near the time of the

underlying crime)" constituted reversible error. *Nelson*, 193 Ill. 2d at 224-25. Consistent with the principle in *Arman* and *Nelson* acknowledging that mug shot evidence may be properly introduced where identification is a material issue, the circuit court here fashioned its *in limine* ruling to minimize the risk of unfair prejudice to defendant by excluding any reference to an unrelated offense.

¶ 22    Defendant argues that even if the circuit court's *in limine* ruling was not an abuse of discretion, the circuit court still abused its discretion because it failed to enforce its ruling. Specifically, defendant contends that the circuit court failed to enforce its ruling by allowing Officer Toliver to testify that the 2014 photos of defendant were "booking photos" and that the "arrest report" would refresh his recollection about defendant's address. However, Officer Toliver's testimony did not violate the circuit court's prior ruling. The circuit court had ruled that the State could not elicit any testimony concerning the nature of the offense for which defendant was arrested. Officer Toliver never testified that defendant was arrested for drinking on the public way. Instead, he testified that he "came in contact with" defendant and wrote him up for an "administrative violation." Once during his testimony, Officer Toliver used the term "arrest report" rather than "administrative report." However, immediately afterwards the circuit court sustained defendant's objection and told the jury to "disregard the statement arrest report."

¶ 23    Additionally, the circuit court denied defendant's request to strike Officer Toliver's testimony because his usage of the phrase "booking photos" did not violate the circuit court's prior ruling:

> "Defendant's request to strike Officer Toliver's testimony is denied. The jurors are not stupid. I did say they couldn't tell them what the actual arrest was for but he was

arrested for an administrative violation. That was my ruling. So if you are arrested, you're going to get a photo taken of you, so then them saying booking photo in my opinion was not violative of my order."

Because Officer Toliver's testimony did not violate the circuit court's prior ruling on the parties' motions *in limine*, the circuit court's denial of defendant's request to strike the entirety of Officer Toliver's testimony was not an abuse of discretion.

¶ 24 Defendant also contends that the circuit court failed to enforce its *in limine* ruling by allowing Detective Davis to testify that "[b]ased on the information received from Patrick Mitchell and a description of the offender, we were able to go through the Chicago Police database system in order to find a possible suspect from that particular incident." Although defendant raised this argument in his motion *in limine*, he did not raise it in his posttrial motion, so it is forfeited on appeal. *People v. Denson*, 2014 IL 116231, ¶ 11 ("In criminal cases, this court has held consistently that a defendant preserves an issue for review by (1) raising it in either a motion *in limine* or a contemporaneous trial objection, and (2) including it in the posttrial motion."). However, defendant argues that this court can still reach this issue under the plain error doctrine.

¶ 25 The plain error doctrine is a limited exception to the general forfeiture rule. *People v. Herron*, 215 Ill. 2d 167, 177 (2005); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). For the plain error doctrine to apply, defendant must show that a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sebby*, 2017 IL 119445, ¶ 48 (quoting

*People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). Therefore, the first question under the plain error doctrine is whether a clear or obvious error occurred. *Id*. ¶ 49.

¶ 26    Detective Davis's testimony did not violate the circuit court's *in limine* ruling. While Detective Davis could not testify about the offense defendant was arrested for in 2014, nothing in the circuit court's ruling prohibited him from testifying that the Chicago police database contained defendant's photographs. Since Detective Davis's testimony did not violate the circuit court's ruling, no clear or obvious error occurred, and defendant's plain error argument fails.

¶ 27    Finally, defendant argues that the circuit court abused its discretion in allowing the jury to view defendant's mug shots during its deliberation. A circuit court's decision to permit evidentiary items to be taken to the jury room is reviewed for an abuse of discretion. *People v. Hudson*, 157 Ill. 2d 401, 439 (1993). Defendant's 2014 mug shots were properly admitted evidence and were probative to establishing the identity of the shooter, which was a material issue at trial. Therefore, the circuit court did not abuse its discretion in allowing the jury to view the photos during its deliberation. See *Hughes*, 257 Ill. App. 3d at 639 (holding that the circuit court did not abuse its discretion in allowing jury to view a photo book containing the defendant's mug shots where defendant's identification was a material issue at trial and the jury had already heard testimony about the photo book); *People v. Davis*, 173 Ill. App. 3d 300, 306 (1988) (holding that the circuit court did not abuse its discretion in allowing photo book to go to the jury because "[a]ny possible prejudice to the defendant was far outweighed by the probative value of the exhibit" since the jury had already heard testimony about the photo book and the book "was not admitted to indicate the defendant's prior criminal activity but to show the jury the photograph from which the defendant was first identified by the eyewitness").

¶ 28                     B. The State's Rebuttal Closing Argument

¶ 29    Defendant argues that the State committed sufficient misconduct during its rebuttal closing argument to entitle defendant to a new trial. The State argues that the remarks in question were proper because they were directed at the defense theory of the case rather than at defense counsel personally and were invited by defense counsel's closing argument. Defendant failed to properly preserve this issue for review because while defense counsel objected three times during the State's rebuttal argument, the objections did not relate to the prosecutor's comments referring to defense counsel's arguments as distractions. *People v. Colyar*, 2013 IL 111835, ¶ 27 (holding that to preserve an issue for appellate review, a party must make a contemporaneous objection before the circuit court and raise the issue in a posttrial motion). We therefore reach this issue under the plain error doctrine. The first question under the plain error doctrine is whether a clear or obvious error occurred at trial. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 30    "Prosecutors are afforded wide latitude in closing argument." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). However, a new trial is warranted when a prosecutor's comments engendered substantial prejudice against the defendant such that the improper remarks were a material factor in the defendant's conviction. *Id.* "Improper remarks are a material factor if (1) the jury could have reached a contrary verdict had the improper remarks not been made or (2) the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction." *People v. Marzonie*, 2018 IL App (4th) 160107, ¶ 48.

¶ 31    "When reviewing claims of prosecutorial misconduct in closing argument, a reviewing court will consider the entire closing arguments of both the prosecutor and the defense attorney, in order to place the remarks in context." *People v. Johnson*, 385 Ill. App. 3d 585, 604 (2008). The

prosecutor may "challenge a defendant's credibility and the credibility of his theory of defense in closing argument when there is evidence to support such a challenge." *People v. Kirchner*, 194 Ill. 2d 502, 549 (2000). However, "[u]nless predicated on evidence that defense counsel behaved unethically, it is improper for a prosecutor to accuse defense counsel of attempting to create reasonable doubt by confusion, misrepresentation, or deception." *People v. Johnson*, 208 Ill. 2d 53, 82 (2003).

¶ 32    Defendant argues that the prosecutor improperly compared defense counsel to a distracting magician. At the start of the State's rebuttal argument, the prosecutor stated:

> "As a kid, did you ever go to a magic show and see a magician or a birthday party where a magician was present and you were just in awe and wonder because he was doing tricks and you had no idea how he does those tricks? As an adult, if you go to one of those kids' magic shows, maybe now you know to look when he is doing flashy things with his right hand over here and your attention is distracted on his right hand, in reality he is using that distraction to pull an ace out of his sleeve with his left hand.

> That is exactly what you have heard from the defense here today. They are presenting you with a bunch of distractions, things that are not truly focused on the issues that point to the defendant's guilt. I want to go over a few of those issues with you here today, and I think you'll see that when you draw those issues out to their logical conclusion, they don't actually make any real sense."

The prosecutor referred to defense counsel's arguments as distractions four additional times throughout her rebuttal argument. Near the end of her argument, the prosecutor said: "[w]hen you utilize that common sense, specifically in this case, you will see the truth that the defense tried

their best to distract you from. That [Mitchell] was correct when he identified the defendant as the shooter."

¶ 33  When analyzed in the context of both parties' closing arguments, the prosecutor's remarks were directed at defense counsel's theory of the case rather than at defense counsel herself. In her closing argument, defense counsel argued that: (1) Mitchell incorrectly identified defendant as the shooter and had given inconsistent testimony; (2) the State had failed to prove a motive for the shooting; (3) the store surveillance footage was inaccurate and did not show defendant; (4) Officer Williams-Lee had seen a man with physical characteristics very different from defendant's running from the scene of the crime; and (5) the State presented no forensic evidence. In her rebuttal argument, the prosecutor responded to each of these arguments and explained to the jury why the arguments either did not make sense or were irrelevant to the jury's ultimate determination of defendant's guilt. It was not improper for the prosecutor to tell the jury that defense counsel's arguments were unconvincing and should be ignored. *People v. Evans*, 209 Ill. 2d 194, 225 (2004) (holding that a prosecutor "may comment upon defense characterizations of the evidence or case" in closing argument); *People v. Doyle*, 328 Ill. App. 3d 1, 12 (2002) ("The prosecution may attack a defendant's theory of defense during closing arguments and may respond to any statements by defense counsel that invite a response."); *People v. Abadia*, 328 Ill. App. 3d 669, 678 (2001) ("[A] prosecutor may comment on the persuasiveness of the defense theory of the case as well as any supporting evidence and reasonable inferences drawn therefrom ***.").

¶ 34  The prosecutor did not argue that defense counsel was lying to the jury or misrepresenting evidence, only that she was trying to distract the jury by emphasizing evidence that was ultimately irrelevant. This was permissible. *People v. Willis*, 2013 IL App (1st) 110233, ¶¶ 106-110 (holding

that the prosecutor's rebuttal argument that defense counsel was attempting to "distract" the jury was not an improper disparagement of defense counsel where "the prosecutor's remarks legitimately respond[ed] to defense counsel's closing argument"); *People v. Love*, 377 Ill. App. 3d 306, 314 (2007) (rejecting defendant's contention that the prosecutor's comment that defense counsel wanted to distract the jury "improperly suggested defense counsel was trying to free his client through deception and trickery" where "[e]ach of the challenged comments directly responded to defense counsel's attempts to impeach certain witnesses or comment on the persuasiveness of the defense theory of the case"); *People v. Hicks*, 101 Ill. App. 3d 238, 243 (1981) ("There is nothing improper in suggesting that the opponents' arguments are immaterial or irrelevant."). Further, while the prosecutor did suggest that defense counsel's arguments were similar to the actions of a distracting magician, she only did this once at the start of her rebuttal argument. While the prosecutor argued four additional times that defense counsel's arguments were distractions, she did not reference magicians again. *People v. Miller*, 2020 IL App (1st) 163304, ¶¶ 55-56 (holding that the prosecutor's comparison of defense counsel's argument to the actions of a magician was permissible where the prosecutor only made a single comment "referencing magic or trickery" and the remark "was in response to defense counsel's argument").

¶ 35     While defendant points to several cases in which courts held that the prosecutors' comments during closing argument were improper, these cases are distinguishable because the prosecutors' comments in those cases were far more inflammatory and prejudicial than in the instant case. See *Johnson*, 208 Ill. 2d at 80-84 (prosecutor "mischaracterized evidence and the applicable law," suggested that "the defense was deceptive in its dealings with the jurors," said that defendants were "celebrating death," and "likened defendant to an animal"); *People v. Blue*,

189 Ill. 2d 99, 128-34 (2000) (prosecutor told jury that the family of the murder victim, a police officer, "need to hear from you that they will get justice" and that "[e]very Chicago police officer" needs to "hear from you that no gun-toting drug dealer is going to get away with shooting one of them" so that "while they serve and protect us we will serve and protect them"); *People v. Kidd*, 147 Ill. 2d 510, 541-44 (1992) (prosecutor stated eight times in arson case that defense counsel was trying to raise a "smoke screen" and that "the defense is hoping that the smoke he raises in this room today will strangle the truth" just as it "strangled the life out of ten children"); *People v. Weathers*, 62 Ill. 2d 114, 119-120 (1975) (prosecutor accused defendant's attorneys of lying and attempting to create reasonable doubt by "confusion, indecision and misrepresentation" and told the jury that the judge knew that defendant was guilty); *Abadia*, 328 Ill. App. 3d at 682-85 (prosecutor repeatedly accused defense attorneys of "misstating the evidence and making things up" and of abusing and mocking one of the State's witnesses, and also accused defendant of intimidating witnesses); *People v. Holloway*, 119 Ill. App. 3d 1014, 1021 (1983) ("During closing argument the prosecutor referred to defendant as a ghoul, told the jury not to be swayed by a clever attorney and labeled defendant's theory of the case as the oldest trick in the book."); *People v. Shaw*, 98 Ill. App. 3d 682, 685 (1981) (prosecutor referred to the defense attorneys as frauds and "hired guns" that were paid to mislead and confuse the jury).

¶ 36    The prosecutor's comments here were not so severe that we can say that they engendered substantial prejudice against defendant such that they were a material factor in defendant's conviction and a clear and obvious error occurred. *Doyle*, 328 Ill. App. 3d at 11-12 ("Improper comment is only plain error when the comment was either so inflammatory that the defendant

could not have received a fair trial or so flagrant that it threatens the deterioration of the judicial process.").

¶ 37     Finally, defendant argues that his trial counsel provided him with ineffective assistance because counsel failed to object to the prosecutor's remarks during trial. An ineffective assistance of counsel claim is governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this test, a defendant must show that his "attorney's performance fell below an objective standard of reasonableness" and that his "attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90. However, because we have already determined that the prosecutor's comments in her rebuttal argument were not improper, defendant cannot establish that he was prejudiced by his counsel's failure to object. See, *e.g.*, *People v. Elizondo*, 2021 IL App (1st) 161699, ¶¶ 87-89 ("As we have determined that there was no reversible error in the State's closing arguments and further that defendant was not prejudiced by any error in the complained-of remarks, defendant cannot show that he was prejudiced by his trial counsel's failure to object to the complained-of remarks to satisfy *Strickland*.").

¶ 38                                        III. CONCLUSION

¶ 39     The judgment of the circuit court of Cook County is affirmed.

¶ 40     Affirmed.